SAMUEL AND JOSEPH G. NESBITT *vs.* WILLIAM DALLAM.
*E. S. June*, 1836.

At the return term of a *Vendi. Exp.* a motion sustained by proof, was made to set aside the sheriff's sale under it, which being overruled, the counsel for the motion excepted, and on the next day presented his bill of exceptions for the seal of the judges.  The right to any exception was contested by the successful party, and the court adjourned without sealing it.  At the next term, the court after further inquiry into the facts, sealed the exception, and filed it as of the preceding term.  *Held,* that it was to be presumed that the delay was the result of some reasonable cause, and that the exception ought not to be expunged from the record.

By the statute of *Westminster 2nd,* it is provided that where any one is impleaded, that is sued, or as was intended, is a party to a suit, he should be allowed his bill of exceptions.  This privilege is not confined to trials before a jury, and extends to a motion to set aside a sheriff's sale.

Oral testimony taken in open court, may be used on a motion to quash an execution or set aside the return of a sale under it, and when used, may form a part of a bill of exceptions; and whether the county court choose to act upon such proof or upon depositions, is matter in its discretion.

It is a presumption of law that the facts appearing in a bill of exceptions are accurately stated; and regularly, no exception can be taken until the judgment of the court is pronounced.

If a party admits proof to be taken in a cause without an oath, after it has been acted upon and made the basis of a judgment, he cannot object to its admissibility.

An answer in Chancery must be verified by affidavit, and if this be omitted, the complainant may treat it as a nullity, and cause it to be taken off the files, but if he proceeds with the cause, he cannot avail himself of that objection in an appellate court.

Where town lots in a place of business and commerce taken under an execution are sold by the sheriff greatly below their value, the circumstance that no notice of the sale was set up nearer than eighteen miles to the property, would induce the court to set aside the sale, and so, if such property be sold at a sacrifice at a place distant from the land.

The time and place of sale under execution are matters resting in the discretion of the sheriff; when his acts on these grounds are contested, he must

appear in their selection to have conducted himself with ordinary prudence and judgment, or the sale will be vacated.

In many of the counties it is customary for the inhabitants on certain days in the week, called public days, to assemble from every part of their counties at their respective county towns; in such counties it would be judicious in the sheriffs to endeavour to make their sales of land on those days and at those places.

Sales of real property taken on execution need not necessarily be made on the premises.

A sale in *mass* made by a sheriff of divers lots of ground, situated in the same town, but separate and distinct from each other, is on motion to vacate it, considered as *prima facie* void, and he who seeks to sustain it must show its justice and expediency.

A sale of real property by the sheriff under execution, for one-fifth of its value, furnishes intrinsic evidence of irregularity, impropriety, or unfairness of the sale, and when taken in connection with any want of ordinary prudence and judgment, on the part of that officer in the selection of the time and place, or giving notice of the sale, is sufficient to vacate it on motion

A sheriff who has in his hands executions upon various judgments, older and younger than a mortgage, cannot without the consent of the mortgagee, after a levy upon distinct parcels of real property, sell them all in *mass* under the execution upon the elder judgment for one-fifth of their value, and thus secure to the purchaser, the property sold, discharged from the mortgage; such a proceeding, whether so intended or not, is a fraud on the rights of the mortgagee.

APPEAL from *Cecil* county court.

The appellee at the April term, 1830, of the *Cecil* county court, obtained judgment against the appellants for between four and five hundred dollars, upon which he caused execution of *fi. fa.* to issue returnable to October term, 1832, when the sheriff returned, that he had levied on and taken several parcels or lots of ground, in the village of *Port Deposit,* which remained unsold for want of buyers.

A *venditioni exponas* issued in December, 1832, returnable to the then ensuing April term, but the sheriff failing to make his return at that term, he was laid under a rule to return to October term, 1833, when he returned, that in virtue of the said writ, and of sundry other writs against the same defendants, he had on the 23d of March, 1833, after giving due notice, sold the property at the court-house door, in the town of

Nesbitt *vs.* Dallam.—1836.

*Elkton,* to *A. Constable, Esq.* for eleven hundred dollars, which had been paid.

The defendants (the present appellants) moved to set aside this sale and return, upon the following grounds :

1. Because the property was in fact sold to one *David J. Nesbitt,* and his written acknowledgment of the purchase taken, but immediately afterwards and without giving the said purchaser an opportunity of complying with the terms of sale, the property was re-sold to *John C. Groome, Esq.* at a reduced price.

2. Because the sheriff did not give due and legal notice of the sale.

3. Because the property was in fact sold to *John C. Groome, Esq.* though *A. Constable, Esq.* was returned as the purchaser.

4. Because the sale was made of the property in the bulk, or altogether, notwithstanding it consisted of distinct parcels, distant and separate from each other, and of different descriptions.

The county court (*Earle, Ch. J. and Eccleston, A. J.*) overruled the motion, and thereupon the purchaser moved for and obtained the writ of *habere facias possessionem.*

At April term, 1833, the return day of this writ, the sheriff returned that he had put the purchaser in possession, when the defendants made an unsuccessful motion to set the said writ and return aside, upon the ground. 1st, That he had no notice of the intended application for it. 2nd, That they had previously actually surrendered the possession. And 3d, that *Constable,* the purchaser, had leased the property to one *David G. Nesbitt,* for a term then unexpired, by whose permission the defendants occupied the premises.

At the October term, 1833, the defendants in support of their motion to set aside the return and sale of the property, proved by competent testimony, that it was exposed to sale on the 23d of March, 1833, at the court-house door in the town of *Elkton,* pursuant to public advertisement in a newspaper printed and published in *Cecil* county, for more than

twenty days previously, and by notices set up at the court-house door, at the post office, and the taverns in the town of *Elkton*, the same being public places in the county, and at no other public places in the county. That on the 7th of March, 1833, and until the day of sale there was printed and published in the town of *Elkton*, another newspaper having a general circulation. That at the sale the property was knocked down to *David J. Nesbitt*, for the sum of $3,000, and that within ten minutes thereafter, the sheriff asked the said *David*, whether he was or expected to be able to comply with the terms of sale, who said, he neither was, or expected to be. That thereupon the sheriff within fifteen minutes, again exposed the property to sale, when *John C. Groome*, *Esq.* became the purchaser for $1,100. That at the second sale, about two-thirds of the persons present at the first, were in attendance, including all who had bid at the first sale. That one of the defendants was present during the whole time, and interposed no objection. That at the time of the first sale, a mortgage on the same property given by the defendants to *Wm. Bromwell*, dated on the 9th of April, 1830, was mentioned by one of the bidders, and the amount thereof, stated to be between $2,250 and $2,300, with interest from its date, with a provision for the securing of other advances, and that said *Groome*, purchased with a knowledge thereof, and that other advances were claimed. That the property consisted of various distinct lots of ground situate in the town of *Port Deposit* in *Cecil* county, at the distance of *eighteen* miles from the town of *Elkton*, worth in the aggregate clear of incumbrances, between five and six thousand dollars. That all the aforesaid property was exposed to sale, and sold in bulk, and included in one bidding. That the defendants before the sale, had paid on account of plaintiff's judgment, the sum of $300, leaving a balance due of $150, or thereabouts.

The plaintiff's counsel in opposition to the motion then proved, that the property was sold, as well under the said writ of *venditioni exponas*, as under sundry other writs against

the defendants, issued upon judgments rendered subsequently to the plaintiff's judgment, and to the date of the aforesaid mortgage, and that the money due upon those other writs amounted to $2,000. That *Groome* after the sale, and before the return, sold to the said *Constable*, all his interest in the property, and agreed that the latter should be returned as the purchaser thereof. That on the 27th of April, 1833, the property was exposed to sale under a decree passed on the 12th of December, 1832, upon said mortgage, when *Bromwell*, the mortgagee, became the purchaser for the sum of $4,100, the whole of which was applied to the satisfaction° of the mortgage. That this latter sale was made in a bulk, the whole being exposed and sold together at one bidding. That the defendants objected to its ratification on that ground, but that the Chancellor overruled the objection, and finally ratified it. That at the time of the trial of said motion, *Bromwell* applied to the Chancellor for process to put him in possession, which application was still pending. That the defendants on the 27th of May, 1833, made application for the benefit of the insolvent laws, and obtained their personal discharge, and that a trustee for the benefit of their creditors was appointed, who gave bond for the performance of his trust, and received from the defendants a deed for their property real, personal, and mixed. That in the schedules of their property exhibited by the defendants, upon their aforesaid application, the lands so sold as aforesaid were not mentioned.

The defendants thereupon insisted, that the several matters so proved by them, were sufficient to invalidate the sale and return, and submitted a prayer to the court to that effect. But the court overruled the prayer, and confirmed the said sale and return, and the defendants excepted.

It appeared by the exception, that the aforegoing motion was founded upon oral testimony, and that parol proof with respect to the several papers, &c. was offered to and received by the court, without their production or objection by the counsel on either side. That after judgment was rendered

thereon, and on the next day thereafter, the defendant's counsel submitted a partial statement of facts, purporting to contain the evidence given at the trial, and desired the statement to be signed and sealed. But the plaintiff's counsel objected to the making of any statement of the evidence, alleging, that the case being tried on oral testimony, they would not consent to its reduction to writing, from recollection afterwards ; none of the proof being reduced to writing, before judgment. The court however, aided by the recollection of counsel on both sides, at the instance of the defendant's counsel, and without the assent of the plaintiff, and against his protest to the contrary, made out and signed, and sealed the preceding statement of the evidence on the 18th of April, 1834, as and for the bill of exceptions of the defendants.

The defendants, then brought the record by appeal, before this court.

The case was argued before STEPHEN, DORSEY, and SPENCE, Judges.

McMAHON and R. JOHNSON for the appellants.

The question relates to the right of the appellants, to avail themselves of the facts embodied in the exception. It cannot be objected that the evidence is not pertinent to a matter examinable upon appeal. That cannot be insisted upon, but it may be said, that the proof reached the county court through a medium, which precludes this court from revising their judgment. But, of what consequence can it be, how the facts are brought to the notice of the court ? In this case, as in most cases of the same character, parol proof must necessarily be resorted to, or many material circumstances will unavoidably be excluded. The facts affecting the validity of the sale, can only be established in that way, and if the appellate court, is denied the right to look at these facts, because they rest upon oral testimony, the privilege of an appeal in such cases, is destitute of any substantial advantage.

If the judgment of the county court can be revised at all, it must be upon the case, and all its concomitant circumstances, upon which that judgment was founded. The office of an exception is not restricted to matters appearing before the trial; any matter of exception, alleged *ore tenus*, which can thus only be spread upon the record, is the fit subject of an exception, without reference to the stage of the cause, at which it arises. 2 *Reeves' Eng. Law*, 188. If the court in opposition to its own rule, denies a party the right to amend his pleadings, he may except. *Briscoe et al, vs. Ward,* 1 *Har. and John.* 165. *Union Bank vs. Ridgely,* 1 *Har. and Gill,* 324. As he may also, if the court charge the jury, without being applied to by either party. *Church vs. Hubbard,* 2 *Cranch,* 239, (note.) *Smith et al, vs. Carrington et al,* 4 *Ib.* 72. *Ford vs. Potts, et al,* 1 *Hals'd,* 388, 391. The statute authorizes parties impleaded, to suggest exception *ore tenus,* at any time, and if there be limitations upon the right, it is incumbent upon the appellee to show them.

No well founded objection can be urged, as to the *time* at which the exception was taken.

It is the judgment of October term, 1833, which is to be examined; and the exception shows, that the statement of facts was presented the day after the judgment, and was settled by the court, at the succeeding term, with the aid of the counsel on both sides. The objection of the appellee in the county court, did not refer to the time, at which the exception was taken, but was based upon the ground, that none could be taken at all. If however, the objection had been pressed there, it could not be sustained; the taking of an exception divides itself into three stages. 1st, the noting, next, the presentation, and finally, the signing and sealing. The noting here, was immediately after the judgment, until which, it was impossible for either party to know whether it would be for, or against him, and of course he could not tell whether an exception would be necessary.

It is not like an objection to the admissibility of evidence, which must be interposed when the evidence is offered, that

the other party may have an opportunity of removing it. *Wright vs. Sharpe*, 11 *Mod.* 175. *Jones and Clark vs. Ins. Co. N. A.* 1 *Binney*, 38. *Ib.* 4 *Dallas*, 249. *Lanuse vs. Barker*, 10 *Johns.* 330. As to the presentation of the exception to the court, the statute defines no time, and each case must be governed by its own circumstances. The English practice is to prepare, and present after trial. *Gardiner vs. Baillie*, 1 *Bos. and Pull.* 32. *Dillon vs. Doe dem. Parker*, 8 *Serg. and Low*, 227.

In this country, the whole term is allowed, and after the term, the inferior court has a discretion, and if in its exercise they allow it, the court above have no right to disallow it. *Sikes vs. Ransom*, 6 *Johns. Rep.* 279. *Midberry vs. Collins*, 9 *Ib.* 345. *Ex parte Martha Bradstreet*, 4 *Peters*, 107. *Camp vs. Tompkins*, 9 *Con. Rep.* 545. *Morris vs. Buckley*, 8 *Serg. and Rawle*, 216, 218. And there are cases in which the courts have by special order, enlarged the time for excepting, to the next term, and there can be no difference between such a case, and the allowing an exception, at such subsequent term without a preliminary order, provided, the court is able to state the facts truly. *Ex parte Martha Bradstreet*, 4 *Peters*, 107. *Shipherd vs. White*, 4 *Cowan*, 32.

The refusal of courts to allow exceptions after the term, does not proceed upon the ground of waiver, but because the evidence then, cannot always be accurately recollected. There is no case in which a true bill of exceptions, has been stricken from the record. *Lanuse vs. Barker*, 10 *Johns.* 322, 330. *Clarke vs. Dutcher*, 19 *Ib.* 246.

In this case, the exceptions was noted and presented during the term, and of course in time, and the delay of the court in signing, (which was their act,) should not be allowed to prejudice the party.

The objections to the sale, as exhibited by the exception and return, are; 1st, that the property was sold in mass, and not in parcels, it consisting of distinct portions, separated by distance, and differing in their uses. The rule which requires the separate exposure to sale of such property, is founded

upon the principle, that no more shall be sold, than will pay the executions. At that point, the sheriff is bound to stop, which he cannot do, if the entire property is sold together.

By selling in parcels, the interests of the parties is promoted, by exciting competition among the bidders; as the contrary course, drives from the market all those who want but portions of the property, or whose means are inadequate to purchase the whole.

The courts have uniformly discouraged the practice of selling in the lump. *Rose vs. Stuyvesant*, 8 *Johns*. 333. *Ryerson vs. Nicholson*, 2 *Yates*, 516, 518. *Rowley vs. Brown*, 1 *Binney*, 62. *Woods vs. Monell*, 1 *Johns. Ch. R.* 505. *Tiernan vs. Wilson*. 6 *Ib.* 414. *Jackson vs. Newton*, 18 *Johns. Rep.* 355. *Berry vs. Griffith*, 2 *Har. and Gill*, 345. If the property had sold for its full value, (which it did not,) the sale under the circumstances would have been invalid.

2. The sale was not upon the premises, and this appears by the sheriff's return, independently of the exception.

There can be no doubt, that a sale of personal property not present, is void. *Linnendoll vs. Doe*, 14 *Johns. Rep.* 223. *Seymour vs. Minturn*, 17 *Ib.* 172. And the sale being founded upon the reason, that the property should be in the view of the bidders, that they may see what they are buying, and know its value, is equally applicable to real estate. The object is to get the best price, and this is most certainly accomplished, by having the subject of the sale present, that all may be stimulated to bid, and competition not restricted to those only, who have previously examined the property.

3. There was not due notice of the sale. If there be more than one newspaper having a general circulation, the sheriff is bound to advertise in more than one. Act 1816, ch. 129 1813, ch. 102, sec. 7. These acts also require that notice shall be set up at the court-house door, and other public places in the county, which means at *dispersed* places, that the notice may be as widely diffused as possible.

PAGE and O. SCOTT for the appellee.

1. The paper purporting to be a bill of exceptions, cannot be so considered by this court, because the facts contained in it, were not submitted to a jury, whose intervention is indispensable to the right to except. 2 *Tidd. Pr.* 911. 1 *Stark Ev.* 430, 431.

A motion founded upon matters *de hors* the record, must appear by affidavit. If heard on parol evidence, there is a waiver of all objections, and the sufficiency and effect of the facts, are submitted alone to the court, which hears the motion. *Tidd Pr.* 496. 2 *Stark Rep.* 218. *Mountz vs. Hodgson*, 4 *Cranch*, 327. *Cromwell et al, vs. Owings*, 6 *H. and Johns.* 10.

Bills of exceptions are only required to put upon the record matters, which according to the ordinary course of the common law, could not be placed there; but when, as in this case, affidavits may be taken, that is the proper mode of spreading them upon the record.

2. But conceding the case to have been a proper one for an exception, it should have been taken at the time of the trial, and not afterwards. 1 *Stark Ev.* 431. *Walton vs. U. States*, 9 *Wheat.* 651. *Ex parte Martha Bradstreet*, 4 *Peters*, 107. The only modification of the rule, is the result of a practice which has grown up from convenience, to take the exception at the trial, and to draw it up more formally afterwards, from the notes of the judge and counsel. But the rule which requires that the exception shall be taken and reserved at the trial, is never deviated from. The judge must then be informed of the reservation of the exception and must so note it at the time.

In this case, the exception was not signed for six months from the trial, thus exposing the appellee, to the risk of the omission of circumstances, which might have strengthened his case. From the neglect of the appellants to insist upon their exception earlier, the appellee was warranted in presuming that they had waived it. Allow the present exception to prevail, and there is a total departure from every rule upon the subject. There can be no reason then, why an exception

may not be taken at any period within the limits allowed for appeals, and all the dangers likely to flow from the conflicting and imperfect recollection of facts will inevitably be encountered. The appellate court will necessarily, frequently review the judgments of inferior tribunals upon a different state of facts from that which the latter decided upon. The rule which requires, that the exception should be taken at the time when the facts are fresh in the recollection of all concerned, and the witnesses are present to remove every doubt upon the subject, should be strictly adhered to.

Putting aside the exception, there is nothing to show that the property was sold in mass. The return of the sheriff does not prove it, and the only circumstance in the return, from which such an inference can be deduced is, that he does not designate the amount for which each separate portion of the property sold, and the court will not assume that fact, upon doubtful inferences; if that mode of sale, shall be considered illegal, because all public officers are presumed to act legally, until the contrary is shown.

But if the sale was in bulk, that does not *per se* render it void. There must be some evidence of abuse of power on the part of the sheriff, or fraud, or at least, manifest inadequacy of price. *Woods vs. Monell*, 1 *Johns. Ch. C.* 502. *Mohawk Bank vs. Atwater*, 2 *Paige*, 61. *Hanson vs. Barnes, Lessee*, 3 *Gill and Johns.* 359. Within certain restrictions defined by law, the time, manner, and terms of sale, are discretionary with the sheriff, in the confidence that he will not abuse his trust. *Hanson vs. Barnes, Lessee*, 3 *Gill and Johns.* 359. Those who object to the mode of sale must show, that a different mode would have brought a better price, reference being had, not simply to the value of the land, but also to the value of the *title*. It is evident, looking to the proof in this case, that some circumstances operated to the disadvantage of the sale, beside the manner in which the property was exposed, because the entire parcel, did not bring as much as the estimate put upon each portion, and it cannot be supposed that any one who would have given the

separate value of either, gave less because it was associated with other portions. If sheriffs are not permitted to sell incumbered titles in the mass, the difficulties of disposing of them at all, will be seriously multiplied, as it will rarely happen that many purchasers will be found willing to involve themselves in litigation.

In such cases, the sheriff should be allowed to sell as he can, the great obstacle being to find a bidder at all. Every encouragement therefore, consistent with the rules of law, should be afforded them, instead of adopting a practice calculated to repress the avidity of speculation, which in such cases cannot, and does not exist. It would be idle under such circumstances, to look for prices which might be expected, if the property was put in the market, in a mode which would not ensure the title to the purchaser, and place him in possession at some defined, and stipulated period; for this reason, inadequacy of price has no influence upon a sheriff's sale. Besides if each portion must be sold separately, how will the court distribute the incumbrances? *Atherton vs. Jones*, 1 *New Hamp. Rep.* 363. *Brumley vs. Fanning and Devoe*, 1 *Johns. Ch. C.* 501.

It has been objected, that the sale should have been made upon the premises, by analogy to the rule, which requires the presence of personal property at the time and place of sale.

But there is no sort of analogy between the cases. In regard to personal property it is necessary it should be present, for the double purpose of enabling the sheriff at once to deliver the possession, which it is his duty to do, and that purchasers may see and judge of its value. Neither of these reasons apply to sales of real estate. The sheriff has no power to deliver the possession to the purchaser, nor does the latter desire to have the property under his eye at the time of the bid, because being permanent and fixed in its nature, he may, and always does examine and judge of its value previously. Besides if it be desirable, that accidental bidders should be present, a sale at the most public place in the county, would be more eligible than any other.

DORSEY, Judge, delivered the opinion of the court.

The appellee's motion to this court, to " set aside and strike from the record the paper contained therein, and purporting to be a bill of exceptions," if sustained, would exclude from our consideration many of the questions presented in the course of the argument; and, therefore, claims priority in the order, in which the various branches of this case suggest themselves for our determination. In support of this motion, three reasons have been assigned. *First*, " because the said paper was not drawn up, or reduced to writing as is apparent on its face, until several months after the judgment of the court was rendered." *Secondly*, " because the evidence given on a motion to set aside a sheriff's return, cannot form the subject of a bill of exceptions." And *Thirdly*, " because the said motion to set aside the sheriff's sale in said record mentioned, was tried upon oral proof, which proof could not after the motion was decided, be reduced to writing and placed upon the record without the assent of the appellee, which was not had, as is apparent from said bill of exceptions."

. " In weighing the sufficiency of the first reason, we are necessarily brought to the examination of the facts and circumstances, attending the taking and · filing this alleged bill of exceptions. The record shews, that at October term, 1833, to which the sheriff made return of the *venditioni · exponas*, as soon as the county court gave judgment, overruling the motion to set aside the sheriff's sale and return, the appellants excepted thereto, and the next day thereafter, presented a statement of the facts in evidence at the trial of their motion, or in other words their bill of exceptions, and requested that it might be signed and sealed by the court. The court not deeming the statement of facts entirely satisfactory, and the appellee's counsel, objecting to the making of any statement of the evidence in the case, alleging that it was tried on oral testimony, and that they would not consent to its reduction to writing, from recollection after the case was tried, did not then adjust the

bill of exceptions ; and before this operation was performed, an adjournment for the term took place. Whether the court held the case under *a curia*, with a view to prepare a bill of exceptions, more fully and impartially detailing the facts and circumstances before them, or for the purpose of forming a more mature and correct opinion of the weight due to the objection urged by the appellee, or whether the adjournment of the court occured, so immediately after the agitation of the question in respect to the bill of exceptions, that there was no opportunity given to the court for its adjustment, the record furnishes us no means of ascertaining. But judicial courtesy forbids us to assume, that the delay was not the result of some reasonable cause. To forfeit the rights of the appellants for this act of the court, for the redress or prevention of which, as far as is distinctly disclosed by the record, there were no means in their power, would seem rather too rigorous a measure of justice. At the instance of the appellants' counsel at the succeeding term, the court aided by the recollection of the counsel on both sides, prepared and signed the bill of exceptions ; which according to the clerical *formula*, was inserted in the record as filed at October term, 1833. Without doing great injustice to the appellants, we do not feel ourselves at liberty for the first reason assigned therefor, to expunge from the record this bill of exceptions.

Is the second reason assigned for so doing, of more imperative obligation ? We think not, there is nothing in the words of the *Statute of Westminster*, so to restrict its operation. At common law, where the plaintiff or defendant, " alleged any thing *ore tenus*, which was overruled by the judge, this could not be assigned for error, not appearing within the record." " And so the party grieved was without remedy ;" therefore the *Statute of Westminster* 2, provides that when one is impleaded, that is sued, or as was intended, is a party to a suit, he should be allowed his bill of exceptions. It does not either in its letter or spirit, confine this privilege to trials before a jury, and although the necessity

for its use except in such trials, is of rare occurence ; yet cases do sometimes occur, and as such we regard the present, where the evil which the statute was designed to remedy, is as strikingly exemplified, the necessity of its application as obviously demonstrated, as it could be on a jury trial. As authorities shewing that this restricted operation of the statute has not been adopted in courts of law, see *Briscoe et al vs. Ward,* 1 *Harr. and Johns.* 165. *Ford vs. Potts and others,* 1 *Hals'd Rep.* 388, We do not therefore regard the second reason assigned, as in anywise tending to support the motion of the appellee.

Nor do we esteem the third reason as sufficient for that purpose. There is no legislative enactment nor rule of *Cecil* county court, as far as we can learn from the record, which prohibits the use of oral testimony in open court, on a motion pending before it to quash an execution, or set aside a sale made under it, or which requires that such testimony when received, if it be made the basis of a bill of exceptions, should be reduced to writing before the court's judgment upon the motion is pronounced, and we do not feel ourselves inclined, from the special circumstances of this case, to adopt a new rule for its government. The oral examination of witnesses by the county court, was perhaps the best mode which could be adopted to elicit the truth, and enable them to form a correct judgment on the question before them. At all events, whether they chose to act on the case on oral testimony before them, committed to writing or not com-. mitted to writing, or upon depositions previously taken under the authority of the court, is a matter resting exclusively in their discretion, and in no aspect of the case, can deprive either party of the right of having the opinion of the court reviewed, on a bill of exceptions. In deciding upon the motion, the court must have weighed and considered all the testimony disclosed on the trial, and being notified at the moment their opinion was pronounced, when all the facts where fresh in their recollection, that the appellants asked leave to except, and that the court would sign a bill of ex-

ceptions, we cannot do otherwise than presume that the facts upon which their opinion was founded, have been accurately embodied in the bill of exceptions; and this presumption is strongly fortified by the fact, that in preparing it they were aided by the counsel on both sides. The numerous *dicta* and authorities referred to as shewing, that the material parts of a bill of exceptions must be prepared by the party excepting, before the verdict is rendered or judgment of the court given, have no application to the case at bar. Until the opinion of the court was pronounced, there could be no exception; there was nothing to be excepted to. It is that alone which intimates to either party, the necessity of preparing a bill of exceptions. The third reason assigned cannot then avail the appellee for the purpose for which it was offered. See *Camp vs. Tompkins,* 9 *Conn. Rep.* 545. Conceding the right of the appellants to have their case reviewed before this tribunal, it is insisted that the judgment of the county court must be affirmed, because the reasons assigned in support of the motion to set aside the sheriff's sale, depending on matters of fact, not appearing at the time it was made in the record or proceedings of the county court, they could not be made the basis of such a motion, unless verified by affidavit. This position we think undeniable, had it been assumed by the appellee at the appropriate stage of the litigation before the county court. If objected to at the trial there, all evidence offered to prove such facts must have been rejected. But if the testimony be permitted to be given without opposition as to its admissibility, and after the judgment of the court is pronounced upon the whole case as presented by the proof, it be brought before an appellate tribunal upon a bill of exceptions, which shews that no question on the admissibility of the evidence was raised in the court below, it may well be doubted, whether on the trial of the appeal, the court would listen to an objection resting on a mere defect in form, when the proceedings in the cause so strongly justify the presumption of its waiver, by the party for whose benefit it was required, and who was

competent to waive it. An answer in Chancery must be verified by affidavit, and if this be omitted, the complainant may treat it as a nullity, and cause it to be taken off the file. If however, without raising the question of its invalidity, he proceeds in the cause as if a regular answer were put in, he certainly could not avail himself of such an objection in an appellate court ; but is presumed to have waived the informality. As an authority on the point now before us, see *Finlay, et al, vs. Hinde and wife,* 1 *Peters,* 241.

But suppose, that independently of *Maryland* legislation upon the subject, this defect would be fatal before an appellate jurisdiction. It cannot for a moment be relied on, since the passage of the act of 1825, ch. 117, sec. 1, which provides, that in no case, shall the appellant or plaintiff in error, or the appellee or defendant in error, be permitted to urge or insist upon any point or question, which shall not appear by the record, to have been raised or made in the county court. So far from this point appearing from the record, to have been brought before the county court; it is manifest from their certificates of the proceedings before them, that no such question was presented for their determination. It cannot therefore be taken advantage of, before this tribunal. We must deal with this judgment then, as if all the facts stated in the bill of exceptions were legitimately before us.

The sale must be set aside, it is urged, because as is alleged due and legal notice thereof, was not given in the mode prescribed by the act of 1816, ch. 129, sec. 1, viz. " by advertisement set up at least twenty days before the day of sale, at the court-house door of the county, and other public places in the county, where such sale may be made." In the case before us, the advertisement of the sale was set up at no public places in the county, except the court-house door, the post-office and two taverns in the town of *Elkton,* notwithstanding the lot of ground sold, lay eighteen miles off, in the town of *Port Deposit* ; " a place of business and commerce." Although, perhaps according to the terms of the act of Assembly, the court on that ground only, might not

feel themselves at liberty, where the advertisement was set up as in the present case, to set aside a sheriff's sale, yet it is a circumstance that would have great weight in inclining them to do so, where the property had been sold greatly below its value. It is the duty of the sheriff in making a judicial sale, to endeavour to obtain the best price in his power for the property to be sold ; and in the exercise of a sound judgment and discretion upon the subject, he should cause advertisements to be set up at such public places in the county, as he may reasonably believe would be conducive to that end ; amongst which, in the present case, in the absence of all proof to the contrary, would be public places in the town of *Port Deposit,* and its vicinity.

It has been contended, that the sale should be vacated, because the property was sold at *Elkton,* and not where it lies at the town of *Port Deposit.* This circumstance we do not of itself regard as a sufficient ground for setting aside the sale, but if it be attended with any sacrifice of the property, it would be conclusive with the court in setting it aside. Although the time and place of sale are matters resting in the discretion of the sheriff, when his acts on these grounds are contested, he must appear in their selection, to have conducted himself with ordinary prudence and judgment. In the absence of all proof to the contrary, we should lend a willing ear to the suggestion, that the sheriff did not so demean himself, when he sold in *Elkton,* without having first made an effort to sell the property in the town of *Port Deposit,* or its vicinity. This want of judgment or dereliction of duty in the sheriff, if followed by a sale at a very reduced price, would be a sufficient foundation for the court to vacate the sale.

Let us not be understood, as intimating an opinion, that in every county in the *State,* where real property is levied on, at a considerable distance from the county town, that it is incumbent on the sheriff, first to attempt a sale upon, or in the neighbourhood of the premises, In many of the counties it is customary for the inhabitants on certain days in the

week, called public days, to assemble from every part of their counties at their respective county towns.   In such counties, it would be judicious in the sheriffs, to endeavour to make their sales of land on those days, and at those places.   There is no proof in this case, of such an usage prevailing in *Cecil* county.   We can yield no sanction to the argument which insists, that all sales of real property must be made upon the premises.

The next question we are called to decide is, whether a sale in *mass* made by a sheriff, of divers lots of ground, situated in the same town, but separate and distinct from each other, ought not, on a motion for that purpose, to be set aside. Such a sale, on a motion to vacate it, we regard as *prima facie* void; and he, who seeks to sustain it, must shew its justice and expediency.   As authorities for this doctrine and shewing the reasons on which it is founded, see *Woods vs. Monell,* 1 *Johns. C. R.* 502.   *Tiernan vs. Wilson,* 6 *Johns. C. R.* 411.   *Stead's Ex'rs. vs. Course,* 4 *Cranch,* 403. *Jackson vs. Newton,* 18 *Johns.* 355.   *Ryerson vs. Nicholson,* 2 *Yeates,* 516.   *Rowley vs. Brown,* 1 *Binney,* 61.   *Wharton's Dig.* 343, and *Berry vs. Griffith,* 2 *Har. and Gill,* 337.

The equity and policy of the principles we have asserted, in reference to the sale before us, could not be more forcibly illustrated than by the consequences which would result if in opposition to them, we were to confirm this sale.   Real estate, on which there were executions and liens, as stated at the time of sale, amounting to between four and five thousand dollars, which was proved to have been worth $5,800, was purchased at $1,100; less than one-fifth part of its value.   Such a disparity between the price and value of the property sold, furnishes intrinsic evidence of the irregularity, impropriety, or unfairness of the sale; and connected with any of the several omissions of duty, or indiscretions of the sheriff before referred to, leaves not to the court a shadow of discretion as to vacating this sale.   But the gross misconduct of the sheriff in making the sale, as respects the rights of one of the parties having a lien on the property, as repre-

sented at the time of sale, is still more apparent by adverting to some of the circumstances attending it. According to a statement made at the time of the sale, there was an outstanding mortgage of between two and three thousand dollars, having a priority over all the executions in the sheriff's hands, except that of the appellee, which though nominally for $450, had but a balance due thereon of $150. And yet the sheriff instead of selling under the execution of the appellee, (which had a priority over all their liens) some one of the lots to satisfy the same, and then proceeding to sell the remaining lots under the other executions, which would have left all the parties in the enjoyment of their unimpaired rightful priorities, undertakes, without the semblance of authority from the mortgagee, to sell the entire property in mass under the execution of the appellee; and thus secure to the purchaser the property sold, absolutely discharged from the mortgage lien. Such a proceeding whether so intended or not, is manifestly a fraud on the rights of the mortgagee.

THE JUDGMENT OF THE COUNTY COURT IS REVERSED, *and the appellant's motion ruled good, and the said sale set aside, vacated and annulled.*

*Let a procedendo issue that such process of execution may be had from the county court, as the nature of the case may require.*