JACKSON, *ex dem.* VANDERLYN & BETTS, *against* NEWTON
and others.

EJECTMENT for part of Lot No. 47, in *Bainbridge*.    To constitute
The cause was commenced in *May* term, 1818, and tried  an *adverse pos-*
                                                        *session*, it is ne-
before Mr. Justice *Woodworth*, at the *Chenango* circuit; in  cessary   only
                                                        that it should
*June*, 1819.                                           be taken under
                                                        claim and co-
The lot, of which the premises are a part, was patented  lour of title. If
                                                        the defendant
to *Timothy Church*, in July, 1786. The plaintiff gave in  has a deed, un-
                                                        der which his
                                                        grantor claim-
                                                        ed title, he is
not bound to produce it, though called for by the plaintiff. And if the deed is produced, and is found
defective, it will not destroy the effect of the defendant's possession.

If a party in possession claiming title under a deed, supposing that there is some defect in the ex-
ecution of his deed, applies to purchase the title of a person claiming the same premises, under a
subsequent deed, with a view to strengthen or quiet his own title, it is not an abandonment of his
own title, nor an acknowledgment of a superior title in another. Where the defendant entered into
possession claiming title, and, afterwards, took a deed for the land from the legal owners, under
whom the plaintiff derived title by a subsequent deed; the possession of the defendant is to be con-
sidered as adverse from the beginning, or, at least, from the date of his deed; and not that its
adverse character commenced from the date of the deed to the plaintiff.

Where the real estate of a debtor consists of a lot of land, divided into separate farms, occupied
by several and distinct tenants, the sheriff cannot sell the whole lot together, under the general de-
scription of a lot of land of a certain number, without any specification of the parcels occupied as
separate farms, &c. And if he does so, the Court, on motion, will set aside the sale.

evidence a judgment and execution against *T. Church,* in favour of *James and William Anderson,* in 1800, and a sheriff's deed dated *June* 4, 1801, recorded *Sept.* 3, 1803, for lot No. 47, sold under the judgment, to *James and William Anderson:* also, a judgment in favour of *John Taylor* against *William Anderson,* dated 19th *July,* 1808, and a record of the revival thereof, by *scire facias,* against the heirs and terre-tenants of *W. Anderson,* docketted 8th *August,* 1817, and a *fieri facias* issued on the judgment against them: also, a deed from the sheriff of the County of *Chenango,* to the lessors of the plaintiff, dated *October* 11, 1817.

The defendant's counsel objected to the plaintiff's recovery, on the ground that *W. Anderson,* or his heirs, or any person claiming under him, had never been in possession of the premises in question. But the objection was overruled by the judge.

The defendant proved, that the sheriff sold the whole of lot No. 47, and two farms of *W. A.* together, for 25 dollars. The defendant then offered to prove that lot No. 47, at the time of the advertisement by the sheriff, was occupied by six or seven different persons, in distinct parcels, claiming under deeds, and some of whom were in possession before *W. A.* purchased the lot, and others in possession under him, and that the defendants claimed adversely to, and by a title older than that of *W. A.* and that the description of the lot, merely by lot No. 47, in the said town, in the sheriff's advertisement and deed, was uncertain and insufficient, but the judge overruled the evidence. The defendant then gave in evidence a deed, dated 19th *February,* 1798, from *Timothy Church* to *Joshua Newton,* for one hundred acres of land, beginning at the north-west corner of lot No. 47, and described by metes and bounds, proved the 7th *June,* 1801, and recorded *June* 5th, 1813,

The plaintiff then called *Joshua Newton,* the grantor in the last mentioned deed, as a witness, in regard to the execution of that deed. The defendants objected to the witness as incompetent; but the objection was overruled. The witness testified, that he moved on the premises the 26th of *May,* 1799, being about 28 years of age; that he first contracted for the land with *Eleazer C.* son of *Timothy C,* which

was about four years before he removed to the lot, and that he took a bond for the deed. He took the deed from *T. C.* before he removed. When the sale was made under the judgment of *J. & W. Anderson*, he shewed his deed to *Dr. Hyde*, who thought it defective ; he, afterwards, showed it to *Benjamin Hovey*, judge of the *C. P.* of *Chenango*, who said he thought it defective, but advised the witness to keep possession of the land, and say nothing about the deed ; and the judge took the proof of it. The witness said, the deed had no actual seal, but a flourish at the end of the grantor's name, with the letters *L. S.* made with a pen. When the deed was executed, it was said there was no wax or wafers, and that a flourish with a pen was equally good. He sowed the first crop on the premises in 1797. That feeling squeamish about his title, he went to *Schenectady*, to purchase *William Anderson's* right, or to sell his own, and was told that *W. A.* was dead, and that he must wait until the heirs were of age. That the witness gave two hundred dollars for the land he purchased, and paid *E. C.* fifty dollars, in part. That he felt no alarm until he heard of the judgment against *T. C.* and understood that his deed was defective On his cross-examination, he said that he had no reason to suppose that the deed to him was antedated, or that *Timothy Church* was not present when it was executed. The witness was present at its execution, and it was admitted by the parties to be sealed as well as signed. He gave a mortgage for the residue of the purchase, which he afterwards took up and destroyed. That the mortgage had no seal, but was signed with a flourish of the pen, as in the deed, *E. C.* was called as a witness, and testified that *J. N.* gave him a mortgage for the balance of the purchase money, and thought it was sealed with paste. Two other witnesses, who were sworn, testified that *Joshua Newton* first began to clear the premises in the year 1797. The points of law raised during the trial were, by consent, reserved, and the facts, as to the execution of the deed, summed up to the jury, who, under the charge of the judge, found a verdict for the plaintiff.

A motion was made to set aside the verdict, and for a new trial.

*Cady,* for the defendants. 1: The sheriff's sale was void. It was made by virtue of an execution against the heirs and terre-tenants of *W. Anderson,* and no judgment was shown to warrant such an execution. Besides, *W. Anderson* had no legal estate in the premises, that could be sold by the sheriff. *Newton* was in possession of the land, claiming to hold under the deed from *T. Church,* adversely. This adverse possession had commenced prior to *Taylor's* judgment, and had continued all the time. No title, therefore, passed by the sheriff's deed. As *W. A.* never took possession of the premises, all that he acquired was a mere right of entry. (*2 Caines' Rep.* 67. 2 *Salk.* 563.)

2. Will the Court intend that the judgment was regularly revived against every person? It was revived on two *nihils* returned to the *scire facias,* without naming any of the heirs or terre-tenants, or giving notice to any one. This appears from the record which is referred to in the case. No person can be disturbed in his possession, without notice.

3. The sale by the sheriff was irregular. He ought to have sold the land in separate and distinct parcels. There were seven distinct farms, occupied by as many tenants. Many persons would bid for one farm, who would not be willing or able to purchase the whole. Selling the whole together, in mass, is ruinous to the debtor, and is a practice not to be tolerated. (13 *Johns. Rep.* 102. 14 *Johns. Rep.* 352. 1 *Johns. Ch. Rep.* 502. 2 *Caines,* 66. 11 *Johns. Rep.* 373.)

4. Admitting, however, that the proceedings under the *scire facias,* and by the sheriff, were regular, yet the lessors of the plaintiff are bound by the statute of limitations. A purchaser under a judgment can be in no better situation than the person under whom he claims, when the statute of limitations has once begun to run. More than 21 years have elapsed since the deed from *Church* to *Newton.*

*Sudam,* contra. 1. The defendant knew that the property was advertised for sale, and might have applied to this. Court to set aside the judgment, or to the Court of Chancery for an injunction to prevent the sale. He now comes too late, after a third person has become the purchaser.

2. The Court, in the cases cited, decided that the deed

was void, for the uncertainty of the description ; not that the
description, by the *number* of the lot in a particular patent,
was not sufficient.   On the contrary, it has been repeatedly
decided that such a description was sufficient. (1 *Caines*, 493.
1 *Johns. Rep.* 444. 2 *Johns. Rep.* 40. 5 *Johns. Rep.* 500. 501.
7 *Johns. Rep.* 252. 8 *Johns. Rep.* 220. 479.)   If the doctrine
contended for by the defendant was to prevail, more than
half of the sales by sheriffs would be overturned.  The deed
on the face of it is regular and valid, and is not to be avoid-
ed by parol evidence.

3. Again ; this objection comes too late.   The defendant
should have applied to the Court to set aside the sale.   He
cannot now make that objection, by way of defence, in an
action brought by a *bona fide* purchaser.

4. The statute of limitations did not commence to run
until *Newton* went into possession on the 26th of *May*, 1799,
under a deed from *Church*.   Before that time, he had no
title, and his possession must be deemed to be that of *Church*,
or the person having title.   Though he may have had a good
right to a deed, yet until he obtained a conveyance, his pos-
session was that of the legal owner.

*Cady*, in reply, said, that though the sheriff's deed for the
whole lot was, *prima facie*, good ; yet when it was shown
that he had sold the whole, consisting of seven distinct farms,
it was not good.   This was a fact which did not appear on
the face of the deed, and may be proved by parol.

Again ; when *Newton* entered on the land in 1797, claim-
ing it as his own, he held a possession adverse to all the
world, and it is from that time the statute commenced.   In
*Jackson, ex dem. Roosevelt*, v. *Wheat*, decided in *May* term,
(*Ante*, 40.) the Court held, that if the party entered into pos-
session under claim or colour of right, whether his title was
good or not, the possession was adverse.   If he has a deed,
he is not bound to produce it, and may rely on his adverse
possession.

SPENCER, Ch. J. delivered the opinion of the Court.   An
adverse possession in this case, for more than 20 years before

the commencement of the suit, forms a decisive objection to the plaintiff's recovery.

*Timothy Church,* who is admitted to have been the owner of lot No. 47, and under whom both parties claim, on the 19th of *February,* 1798, gave what was considered by him and *Joshua Newton,* the grantee, a good and valid deed for the premises, being 100 acres of lot No. 47. *Newton* went into possession of this land in 1797, and sowed his first crop; and although he appears to contradict himself, as to the time when he first took possession, two other witnesses prove that his first clearings were made in 1797. There can be no pretence that the deed was antedated. *Joshua Newton* states, that he has no reason to suppose the deed was antedated, or that *Timothy Church* was not there when it was executed. He says the deed was signed, and allowed by the parties to be sealed; as I understand him, the parties considered it to be sealed. He executed a mortgage to *Eleazer Church,* to secure part of the consideration money, which was subsequently paid, and the mortgage was destroyed. He further states, that he and those claiming under him have been in peaceable possession ever since. It appears that the defendants are *bona fide* purchasers, for valuable consideration, under *Joshua Newton.*

This suit was brought at the *May* term of this Court in 1818, so that there has been more than 20 years' possession, since *Joshua Newton* first took possession, and more than 20 years since the deed was given to him by *Timothy Church.*

To obviate the effect of the statute, the plaintiff seems to rely on the defect in the deed from *Timothy Church* to *J. Newton,* in this, that it had not a seal, but a mere scrawl with a pen and ink for a seal; that *J. Newton* admitted the validity of the title of the *Andersons,* and that thus he and those who held under him, cannot now set up the possession under it as adverse.

With respect to the want of a seal to the deed when it was executed, although that fact has been submitted to a jury, who have found, in conformity to the opinion of the presiding judge, that there was no seal originally to the deed, I must say, that I should hardly have been of that opinion; but in the point of view we are now considering the case, it is im-

material, whether the instrument was sealed or not. Had there been a seal, the title of *Joshua Newton* would have been perfect without a possession, and in that light only is it material. In *Jackson e. d. Roosevelt*, v. *Wheat*,) we decided, upon the authority of several prior cases there referred to, that to constitute an adverse possession, it was only necessary that it should have been under claim and colour of title. We said the defendant was under no necessity of producing the deed under which his grantor claimed title, though called for by the plaintiff. Suppose (we said) the deed had been lost, or when produced was found to be defective, that could not have destroyed the effect of the defendant's possession ; and we referred to repeated decisions, that a continued possession for twenty years under claim of right, ripens into a right of possession which will *toll* an entry ; and again, that it never had been considered necessary to constitute an adverse possession, that there should be a rightful title. Whenever this defence is set up, the idea of such a title is excluded; the fact of possession, and the *quo animo* it was commenced and continued, are the only *tests*.

It is true, that *Hyde* expressed his doubts of the validity of *J. Newton's* deed. *Hovey* did the same ; but he advised him to stick to his deed, and not produce it, but insist upon holding the land under it ; and this advice he pursued. There is no pretence for saying that he ever abandoned his claim under the deed. The only evidence of *Joshua Newton's* recognition of *Anderson's* title is this : *J. Newton* states, " that feeling squeamish about his title, he went to *Schenectady*, several times, to purchase *William Anderson's* right, or to sell ; and the last time, being informed that *A.* was dead, he inquired of an attorney, how he could buy *Anderson's* title, and was told he must wait for the heirs to grow up."

A mere unexecuted intention of either *buying or selling*, from apprehension that a title may be defective, is neither an abandonment of the right and interest actually possessed, nor is it a recognition of a superior right residing in another person; and the only fair inference is, that to quiet and make his title perfectly secure, he would have bought in *Anderson's* claim, or sold his to him, could they have agreed on

VOL. XVIII. 46

*UTICA,*
October, 1820.

JACKSON
v.
NEWTON.

the terms.    It is absurd to consider this, as interrupting *J.* *Newton's* possession, or as diminishing in the smallest degree, his claim of title.

The idea was thrown out, that *J. Newton's* possession commenced its adverse character when the *Andersons* purchased, and that being within 20 years of the commencement of the suit, the plaintiff is not barred.    This position is not tenable.    The *Anderson* title was derived from *Timothy Church,* and when the deed was given to *Newton,* in *February,* 1798, and possession taken, it was adverse to all the world.    The purchase by the *Andersons* forms no epoch, from whence we are to date the commencement of *J. Newton's* adverse possession.    It was adverse to them, and to *T. Church* himself, after his giving the deed.

The sale by the sheriff was of specific farms, and lots of land together.    I cannot entertain a doubt, but that the Court would have set aside the sale, as to the lots, upon a direct application, at the instance of *W. Anderson's* representatives, could they have shown that lot No. 47. was held in distinct parcels by different persons.    Sales in mass of real estate, held in several parcels, are not to be countenanced or tolerated.    They are oppressive and unnecessary; and, for the reasons given by this Court, in 13 *Johns. Rep.* 102. 1 *Binney,* 61. and 1 *Johns. Ch. Rep.* 502. they deserve animadversion.    In this case, there is no evidence of actual fraud ; and as the sale has been acquiesced in so long, it is not necessary to the decision of the cause to consider whether it is void.    For the same reasons, we forbear expressing any opinion as to the objections to the revival of the judgment by *scire facias.*

Judgment for the defendants.