Day *et al. v.* Graham.

</div>

JAMES DAY *et al.*, plaintiffs in error, v. WILLIAM F. GRAHAM, defendant in error.

<div align="center">

*Error to La Salle.*

</div>

The statute requiring the clerk of each Circuit Court to keep a judgment docket is merely directory to the clerk; and the failure, on his part, to comply with such direction, will not prevent the attaching or continuing of a judgment lien, or vitiate any of the proceedings under it, for there is no law making the docketing of a judgment a pre-requisite to its becoming a lien, or to the issuing of an execution thereon. If any one is injured by the neglect of the clerk to perform his duty in this respect, his remedy is against the clerk by suit.

A sale of lands and town lots, *en masse,* which are susceptible of division, is illegal, and the sale will be set aside, either on motion, or by bill in equity, according to circumstances. When the plaintiff in the execution is the purchaser, and has not conveyed the property to a third person, the injured party may have the sale set aside on motion; but if he has conveyed to a third person, who is a purchaser, the remedy is in a Court of Equity.

Several tracts of land and town lots, after being duly advertised by the sheriff, were offered by him for sale on execution in separate pieces, but no bid was made for either of them. They were then offered for sale, *en masse,* and were struck off to one, who was the attorney of record of the judgment creditor, in his own right: *Held,* that, as he did not purchase as an attorney, but in his own right, he must be regarded as a third person, but would be chargeable with notice of all irregularities, if any, and should have an opportunity of explaining away those circumstances, which might defeat his title.

THIS was a proceeding by *motion* in the La Salle Circuit Court; made by sundry judgment creditors and others, judg-

| | |
|---|---|
| 6 | 435 |
| 33a | 651 |
| 6 | 435 |
| 134 | 28 |
| 6 | 435 |
| 136 | 133 |
| 6 | 435 |
| 139 | 561 |
| 6 | 435 |
| 44a | 472 |
| 6 | 435 |
| 184 | 523 |
| 1g | 435 |
| 113a | 311 |

ment debtors, at the November term thereof, 1842, to set aside a *fi. fa.* and sale made by virtue of the same. The motion was based upon the records and proceedings in the cause, and upon affidavit. The defendant resisted the motion, and filed counter affidavits, when the same was taken under advisement. Afterwards, at the November term 1843, the Hon. John D. Caton presiding, the motion was denied.

The material facts in the case appear in the Opinion of the Court.

*J. Butterfield,* and *O. Peters,* for the plaintiffs in error.

*N. H. Purple,* for the defendant in error.

The Opinion of the Court was delivered by

SCATES, J.* In 1837, Graham obtained a judgment against Henry L. Brush, James Day and twelve others in the La Salle Circuit Court, for two hundred, forty six dollars, and twenty nine cents, debt, and twenty two dollars and seventy five cents, costs, by John V. A. Hoes, his attorney. On the twenty second day of September, 1837, the following entry of this judgment was made in the judgment docket:

"Brush, Henry L. *et al.* | William F. Graham, $246·29.

$$19·62\tfrac{1}{2}$$
$$3·12\tfrac{1}{2}$$

$22·75."

In October, an execution issued, upon which two hundred, thirty three dollars, and fifty five and three fourths cents were made, and indorsed. On the eighth day of April, 1838, another issued for the residue which was, by an indorsement, thirty six dollars, and seventy eight and one half cents, with interest from the twenty second day of September, 1837. On the twenty sixth day of May, 1838, the sheriff returned it with his certificate thereto attached, by which it appeared that he had levied the same upon eight distinct parcels of

---

* WILSON, C. J. did not sit in this case.

land amounting to seven hundred and twenty acres, lying in eight different sections, five different townships, and four different ranges, and also upon four town lots in the town of Ottawa; that on the twenty ninth day of April, at nine o'clock, A. M., he proceeded to offer said lands for sale, at the Court House door, in separate and distinct parcels, and received no bid for either of them. He then offered the whole together, when John V. A. Hoes bid for the whole, fifty dollars, and sixty two and a half cents, which being the highest and best bid, he sold the same to him at that sum. The sheriff executed a deed to Hoes for these lands, on the thirtieth day of July, 1840, which was filed for record on the fourteenth day of April, 1842.

At the November term of said Court, 1843, the plaintiffs in error, and six other judgment creditors came by attorney, and upon due notice to Hoes, as attorney for Graham upon the record, and as purchaser at said sale, moved the Court to set aside the execution, and sale made under it, and all subsequent proceedings, for irregularity in issuing it, because there was no docket of any judgment, which would authorize its issuing, and that the sale under it was irregular, in violation of law, fraudulent and oppressive.

In support of this motion, the plaintiffs, Day and the other defendants in that judgment, six others as judgment creditors of Day, read the affidavit of Justin Butterfield, their attorney in this motion, and the attorney of the latter on record for obtaining their two respective judgments against Day, which states in substance, among other things, that at the time said property was bid off by Hoes, it was worth four thousand dollars or thereabout, as he is informed and believes, and still is worth that sum; that at the time of the sale, the title of all said land was in the said James Day, as appears by the records in the recorder's office, as deponent verily believes, and that there was no dispute or doubt about the title to said lands; that at the time of the sale, and most of the time since, the said James Day was and has been deranged, or a lunatic, and wholly incompetent to transact business of any kind; that Rhodes and C. & W. H. Weed, three of the creditors

represented in this motion, at the April term of said Court 1838, recovered a judgment against James Day for the sum of three thousand, five hundred, fifty five dollars and twenty one cents, damages and costs; that execution issued thereon on the nineteenth day of October, 1839, which was levied on five tracts and one lot in Ottawa, being the same lands purchased by said Hoes, and after duly advertising, the same were sold by the sheriff on the twentieth day of December, 1839, and bid off by the plaintiffs in that judgment in separate parcels at separate sums, amounting in the whole to two thousand, nine hundred dollars; that Swords, Halstead and Corning, the other three creditors represented in this motion, at the same term of said Court 1838, recovered a judgment against said Day, for the sum of one thousand, one hundred, twenty three dollars and forty four cents, damages and costs; that execution issued thereon on the nineteenth day of October, 1839, which was duly levied on two other tracts of the same land sold to said Hoes, and duly advertised and sold on the twentieth day of December, 1839, to the said plaintiffs in the last mentioned judgment, in separate parcels and at separate sums, amounting to the sum of nine hundred dollars; that the bids in the aggregate by said creditors of Day, amount to the sum of three thousand, eight hundred dollars, for the same lands in part, sold to Hoes, with some others at fifty dollars and sixty four cents. He further states, that he and his partner, J. H. Collins, were the attorneys of record of said creditors, and still are; that the creditors reside in New York city; that deponent and his partner made diligent search of the records of the La Salle Circuit Court, both before and after the sales last aforesaid, for judgments against the said Day and could find no docket of any judgment against him prior to those last mentioned; and that he and his partner were ignorant in fact of any such judgment in favor of Graham and against Day and others, until some time in the summer of 1843, and at the last term of this Court before this motion, said Hoes exhibits to them his title deed from the sheriff.

John V. A. Hoes appeared in resistance of said motion, and read the affidavits of Reddick, the sheriff, J. O. Glover, Geo.

Day *et al. v.* Graham.

H. Norris, L. Leland, A. Woodruff, M. E. Hollister, another by himself, and a certificate of the recorder of said county; and also, the written consent of seven of the defendants in the judgment, that the motion made on their behalf might be denied.

The substance of these affidavits, so far as it may not already have been set forth, is also follows:

William Reddick, the sheriff, states that the facts set forth in his return on the execution are true, and the circumstances and motives of the sale are truly set forth therein; and that he has executed and delivered deeds to Butterfield & Collins, for their clients, for the lands bought by them under their executions against James Day.

Glover states, that he has lived in Ottowa in said county since 1835, and from that time until 1839, when James Day left the State, he was well acquainted with him; that he was an extensive and careless operator in real estate, that he was well acquainted with the general situation and reputation of his titles on the twenty ninth day of April, 1839, and that he would have considered the bid made by Mr. Hoes as a hazardous bid, without certain reliable knowledge, by reason of the uncertainty then existing relative to Day's titles; that Day's titles were then universally distrusted, so far as deponent knew the opinions of the public; that the records of the recorder's office were then imperfect, and not to be relied on, owing to the irregular manner of recording conveyances, and the imperfect *indicia* of the records, and for these reasons, he should have distrusted his titles, even though they should appear fair upon the records.

Norris stated that he was acquainted with Day's titles, as well as any person not immediately connected in business with him, and that his titles were in general disrepute, and very much distrusted.

Leland stated that he had lived there from 1835, knew Day, &c., and corroborated the statements of Glover and Norris; and that he was a practising lawyer in that Court during that period.

Woodruff states that he was sheriff from 1836 to 1838, and

corroborates the statements relative to Day's titles and the recorder's office.

John V. A. Hoes states, in addition to the facts about the sale to him by the sheriff, that he came into the State in 1836, and was acquainted with Day and the reputation of his titles; that he would not have given the sum he bid for any one tract, from reputation the titles being extremely hazardous and doubtful, and having no confidence in them.

The certificate of the recorder states, that there is nothing of record in his office showing title in James Day to three of these tracts of land; that there are title papers recorded as to four, and as to the others, there are incumbrances of record.

Hollister states, that he had compared the abstract and statements in the recorder's certificate with the recorder's books, and that it is correct.

Upon these facts, the Court refused the motion, to which the plaintiffs in error excepted, and tendered a bill of exceptions, and assign this decision for error.

The statute requires the clerk of each Circuit Court, to keep a well bound book, in which, during the term or within thirty days thereafter, he shall enter in alphabetical order, all judgments and decrees rendered by the Court at the term, by the name of the person against whom it was rendered, with proper columns for the names of the parties, the date, the nature of the judgment or decree, the amount of the debt, damages, and costs, the book and page in which it is entered, with a blank column for entering a note of the satisfaction or other disposition of it; and when it is satisfied, it is the duty of the clerk so to enter it, showing how, the date, book, and page, and where the evidence is recorded. This docket all persons may examine without fee, and penalties are provided for a neglect to keep, or make entries in it. Gale's Stat. 529, 534.

It is contended that the docketing in the case before us is void, that no execution could issue, and that the sale and proceedings are void.

This judgment docket is intended to afford full and com-

Day *et al. v.* Graham.

plete information to all the world, of such judgment lien, and change of title by sale under it. For that purpose it should be made full, so as to afford that information. Where there are several defendants, as in this case, the judgment docket ought to set forth the name of one defendant, "with others," and also a similar docketing alphabetically, under the letter of each defendant's name, which would be much better calculated to afford the necessary information; otherwise, it might happen in many instances, as in this case, where other creditors of James Day having judgments against him only, would have no knowledge that he had been impleaded with others, and could not therefore find under what defendant's letter the docketing had been entered.

We are all of opinion, that this entry was insufficient. But we are also of opinion, that the statute is directory to the clerk; that a failure on his part will not prevent the attaching or continuing of the judgment lien, or vitiate any proceedings under it, and that the party's remedy is by suit against the clerk. Gale's Stat. 134, 135, §§ 29, 31. There is no law making such docketing of the judgment a pre-requisite to the judgment becoming a lien, or to the issuing an execution upon it. The execution was not, therefore, irregularly issued, and there is no ground to quash it.

Another objection is, that the several tracts of land and town lots were sold *en masse*. The proviso to the ninth section of the statute concerning judgments, &c., Gale's Stat. 391, requires the sheriff, when property, real or personal, shall be levied upon, to sell it in such quantities as may be necessary to satisfy the execution, if it be susceptible of division. Such was the requirement of the law without the statute. Courts have ever vigilantly supervised the manner of the execution of their process, and given relief against the oppressive, and injurious acts of officers; sometimes summary relief by motion, sometimes by bill. The purchaser, in this instance, was the attorney on record in the case, and must, therefore, be deemed to have had notice of every irregularity, and will be allowed no other protection than the plaintiff in the execution. The sheriff returns that he advertised the

lands for twenty days, and at 9 o'clock, A. M., offered them for sale at the Court House door, in separate pieces; that he received no bid for either. He then offered them all together, when Mr. Hoes purchased at fifty dollars, sixty two and a half cents. These facts are corroborated by Mr. Hoes. It further appears that the several creditors, who are plaintiffs on this motion, had judgments against Day, and which would have become liens upon his lands, after the satisfaction of Graham's prior judgment, and that a part of these very lands were sold under executions upon their judgments, and purchased in by them respectively, at sums amounting in the aggregate to three thousand, eight hundred dollars. They, as well as Day, complain of the sale of these lands *en masse*, as being a sacrifice to their prejudice. The answer to the objection is, that Day's titles were in bad repute, and that the recorder's books were so imperfectly, and badly kept, that it was difficult, if not impossible, to ascertain what title he had. All this may have justified great caution on the part of bidders, but will not justify such a sale to enable purchasers to make such fishing bids. They should have examined his titles, such as they were, and made their bids according to their opinion of his title to each tract. To allow such a sale as is here made upon such reasons as are assigned, would be to establish a rule under which gross frauds, injustice and oppression might be practised to the prejudice of debtors, and a sacrifice of the interests of other creditors, looking to the same fund for satisfaction of their debts. We have no doubt but what the sale of the property, *en masse*, was illegal and ought to be set aside.

In the case of *Jackson* v. *Newton*, 18 Johns. 362, the Court expressed a decided disapprobation of the sale of farms and lots of land together, under an execution, and said that upon a direct application, they did not entertain a doubt, but that the sale would have been set aside.

In *Groff* v. *Jones*, 6 Wend. 522, a motion was made by a junior judgment creditor to set aside a sale under an execution on a prior judgment, on the ground that the sale was fraudulent, twenty acres of land, susceptible of division and

worth ten thousand dollars, having been sold, *en masse*, for one hundred dollars. The New York statute in relation to selling property in parcels, if susceptible of division, is very similar to ours. The Court ordered the sale to be set aside as fraudulent.

In the case of *McDonald* v. *Neilson*, 2 Cowen, 177, 189, Sutherland, J. in remarking upon the sale under execution, out of which arose the obligation sought to be set aside by bill, said, that officers cannot resort to the *ultima ratio*, when their legitimate object can be effected by milder means. Both he and Chief Justice Savage seemed clearly of opinion, that officers ought to adjourn sales to prevent a sacrifice of a debtor's property, if they can do so, and still make a sale within the return day.

In the case of *Lord Cranstoun* v. *Johnson*, 3 Vesey Jr. 170, a sale was set aside because the circumstances of the proceedings showed that the party sought more to make an advantageous purchase, than a satisfaction of his debt.

In the case of *Woods* v. *Monell*, 1 Johns. Ch. R. 505, the Court distinctly recognizes the law, that a sale, *en masse*, will not be sustained, when the property is susceptible of division, but dismissed the bill because the fact did not so appear in that case. The same doctrine is recognized in *Hewson* v. *Deygert*, 8 Johns. 333.

In *Stead's Executors* v. *Course*, 2 Peters' Cond. R. 153, it was held that the sale of a whole tract, when part would have been sufficient, was irregular. See also, *Rowley* v. *Webb*, 1 Binn. 61.

I have referred to sufficient authority to show upon principle, that this sale was irregular and void. It is objected, that it cannot be questioned here, upon a summary proceeding by motion. It may not be amiss to examine the precedents for such a course. Most of the cases to which I have adverted, were by bill.

In the case of *Miller* v. *Anderson*, Littell's Select Cases, 169, a motion was made in 1811 to quash an execution issued in 1804, and sustained by the Court; but it does not appear by the report, that any sale or levy had been made.

In the case of *Sloo* v. *The State Bank of Illinois*, 1 Scam. 428, a motion was entertained and sustained, to set aside a judgment.

In the case of *Groff* v. *Jones*, before referred to, the Court set aside a sale under an execution, or motion, imposing terms, that the debt of the plaintiff in execution should be paid.

In *Adams* v. *Smith*, 5 Cowen, 280, on motion, an indorsement by the sheriff on an execution of the amount made by sale of personalty, which was not liable to the execution, was stricken out, and another execution allowed to be issued for the whole debt.

The Court say in argument, in the case of *Jackson* v. *Roberts*, 7 Wend. 88, that "a party who may be injured by the mistakes of a sheriff, can have relief by a summary application to the Court, under whose authority the officer acts, or through the medium of a Court of Equity." It is but a dictum, as the question before them was, as to the admissibility of parol evidence to show an error in the recital of the sheriff's deed.

There is another dictum by Chief Justice Spencer, in *Jackson* v. *Newton*, 18 Johns. 362, to the same purport, that the Court would set aside a sale of land, *en masse*, on motion. The case was an ejectment, and the deed was collaterally attacked for irregularity in the sale.

In the case of *Hurd* v. *Magee*, 3 Cowen, 35, plaintiff moved the Court for a *mandamus* against the defendant, who had sold him land under an execution as sheriff, to compel him to execute a deed. It was resisted upon the ground that a subsequent judgment creditor had redeemed; but it was held that the land was not subject to redemption. The motion was then resisted upon the ground that the judgment of Reeve, and Hurd's purchase under it, were fraudulent as to other creditors. The Court say,—"Suppose a case of fraud made out, we could not try it in this summary form." Wells, a subsequent judgment creditor "should have caused the proceedings to be stayed, or filed his bill in Equity and prevented the sale, till the question had been settled, whether his judgment could be let in on account of the fraud or not."

The case of *The People* v. *Haskins*, 7 Wend. 469, was this: After the statute allowing judgment creditors to redeem, the relator, a judgment creditor, offered the redemption money to the defendant, who was sheriff, and demanded a deed. The sheriff refused, and conveyed to the purchaser at the sale on the execution. The relator now moved the Court for a *mandamus* to compel the sheriff to convey; and also to vacate the deed to the purchaser, who had conveyed the premises to others. The Court granted the *mandamus,* but refused to make any order to vacate the deed from the sheriff to the purchaser, or from the purchaser to others, remarking that "we never order a deed to be cancelled, given under such circumstances. It may be questionable, whether the Court have authority to make such an order."

In the case of *Lansing* v. *Quackenbush*, 5 Cowen, 38, the sheriff sold certain lots of land supposed to belong to the defendant, and to which he represented he had title. The amount of the sale was indorsed upon the execution, and the sheriff gave a certificate to the purchaser, one of the plaintiffs in the execution. It turned out, upon inquiry, that a part, and greater portion in value, absolutely belonged to another. The motion was to amend the return by reducing the amount on the execution to the amount bid for the lots, to which defendant had title, and to strike out the other lots from the certificate of purchase. *Per Curiam:* "Clearly there must be a remedy in this case, but we do not grant it upon this motion, because we think the more proper forum is a Court of Equity."

Upon these authorities, we are of opinion, that where the plaintiff in the execution is the purchaser, and before he conveys to another, the Court would set aside the sale upon a motion. But after he conveys to a third person, and where a third person becomes a purchaser, the Court will not determine, in this summary way, questions which may affect the rights of others, not before the Court, and without opportunity of explaining away those circumstances which might destroy his title. Although the purchaser here was the attorney, and will be chargeable with notice of all irregulari-

ties, if any, yet he is a third person, and did not purchase as an attorney, but in his own right.

We therefore affirm the order denying the motion with cost, and leave the party to seek his remedy in a Court of Equity, where, if the sale be set aside, such terms may be imposed as may be equitable.

*Order affirmed.*

After the foregoing Opinion was delivered, the following petition for a re-hearing was filed:

J. BUTTERFIELD, attorney for the plaintiffs in error, respectfully states, that he apprehends this honorable Court have misconceived the nature of the application that was made in the Court below, to set aside the sale made under the execution in this case, and the law applicable thereto. The application was not to set aside the sheriff's deed, but the sale under the execution.

Our statute provides that the sheriff shall sell real estate, when susceptible of division, in separate quantities. In this case, the sheriff sold lands lying in different sections, townships and ranges, *en masse.* This sale was in express violation of the positive enactment of the statute, and this Court say in their opinion, "we have no doubt but what the sale was illegal and ought to be set aside," but come to the conclusion that the remedy is in Chancery. I feel confident the Court have erred, in deciding that a Court of Chancery is the proper forum to be sent to for redress in this case. I call upon the Court to discriminate between a fraudulent sale and an irregular sale. This sale is irregular upon the face of the record. There stands the statute, declaring that the property shall be sold in separate quantities; here stands the sheriff's return, that he, in violation of the statute, sold the property, *en masse.* The sale is irregular and void *per se.* There is, and can be, no dispute about the irregularity of this sale; not all the testimony on affidavits that could be taken between this time and doomsday could alter the facts as they appear on the record, or cure the defect in the sale, or throw one

Day *et al. v.* Graham.

ray of new light upon it. Then why should the plaintiffs in error be saddled with a bill of costs in this Court, and turned over to a Court of Equity to obtain a decree to set aside a void sale?

Had not the Circuit Court, a Court of original and general jurisdiction, control over its own process? Has it not the absolute power to set aside an execution which has been irregularly issued, or a sale which has been irregularly made under it? Where does the power of a Court of Law over its own process cease, and when does the power of a Court of Chancery commence? Has any authority been cited, or referred to on this subject? Establish by a judicial decision, that a Court of Law has not the power to vacate and set aside its own process on a sale which has been irregularly made under it, and you strike at the very foundation of the administration of public justice. The sheriff is the mere agent and servant of the Court, and all his acts under the process of the Court are subject to its control and supervision.

In relation to the proceedings of a Court at Law, a Court of Chancery has no jurisdiction except in cases of fraud or mistake; and there is not a solitary case in all the books where a Court of Chancery has ever set aside a sale made under an execution at law, except in the cases of frauds or mistake. It has no jurisdiction to interfere except in such cases. The Courts of Law in New York have claimed and exercised a concurrent jurisdiction with the Court of Chancery, in setting aside sales under executions for frauds and mistakes. But I aver that there is not a case or dictum to be found, that a Court of Law has not the power, or that a Court of Chancery has the power to set aside a sale irregularly made under an execution at law.

If a sheriff should sell a lot of land of great value, for a very small sum, there the sale would be regular on its face, but the inadequacy of the price for which it was sold, would be evidence of fraud, and in New York such sales have been set aside, both at Law and in Chancery. So, when a sheriff was, at the time of sale, tendered with the money, but refused to receive any thing but specie, and refused to adjourn the sale, but sold the property at a sacrifice, there the Court of Chan-

cery set aside the sale as fraudulent and oppressive. There are many such cases where the sale is irregular on its face, where all the forms of the law have been complied with, and in such cases a Court of Chancery is the proper forum to try the question of fraud. But, in the case under consideration, the sale was not made in the manner prescribed by law; the forms of the law have not been complied with; the sale was irregular on its face;—whether it was not also fraudulent, it is immaterial to inquire,—it was certainly irregular, the defect cannot be cured; there is nothing to give a Court of Chancery jurisdiction. There is no issue to be tried there; there is no testimony to be weighed or balanced; there is a fatal error in the sale, appearing of record; and not a single reason has been, or can be urged, why the Court that issued the execution has not the power to set aside the sale. But it is said that a deed has been executed to the purchaser at the sheriff's sale, and that, therefore, it is a case of Equity jurisdiction, as the setting aside the sale will affect the title of the purchaser under his deed.

I am prepared to show, on a re-argument of this case, that, on an application to set aside a sale for irregularity in the sale, it is perfectly immaterial whether the sheriff has executed a deed to the purchaser or not; and that it is not the subject of inquiry; and there are several cases where sales have been set aside by the Court after deed executed. If the sale was irregular, and in violation of the statute, the execution of a deed does not cure the defect in the sale. It would be strange, indeed, if the sheriff, by executing to the purchaser a deed, could oust the Court, out of which the execution issued, from the power of setting aside a sale made in violation of the provisions of the statute. There is not a case to be found, that intimates such a doctrine. If the sale is irregular, it is made by the sheriff without authority and is void, and will be set aside by the Court out of which the execution issued, whether the sheriff has executed a deed or not. If the sale is irregular and void, *per se,* it is a new doctrine, that the execution of a deed would cure it, or that the deed would confer on the vendee any right.

In all the cases referred to by this Court in the decision of

this case, in support of the principle that a Court of Law would not set aside a sheriff's deed on motion, it will be seen by reference thereto, that they are cases where the sale was irregular on its face, and a direct motion was made to the Court to set aside—not the sale—but the deed, on the ground that it was executed by mistake, or contained erroneous recitals. Now, in all such cases, whether the deed was executed by mistake, or contained erroneous recitals, is a matter to be established by proof *dehors* the record, and a Court of Chancery may be the proper forum, though in just such a case, the Supreme Court of New York say, that the party injured by the mistakes of the sheriff may have relief by a summary application to the Court under whose authority the officer acted, or through the medium of a Court of Chancery. *Jackson* v. *Roberts*, 7 Wend. 88. It will be seen by reference to all the cases cited by this Court to establish the position, that a Court of Law will not set aside a sheriff's deed on motion, that they are cases where the sale was regular, and the motion was to set aside the deed, or to compel the sheriff to execute another deed. My motion was to set aside the sale, a sale made irregularly and in violation of the forms of law, and I do most solemnly and respectfully protest against the decision of this motion, by the misapplication of authorities in relation to the setting aside of a sheriff's deed after a regular sale. If I had not impeached the sale in this case, but had admitted it to be regular, and had made a motion to set aside the sheriff's deed, or to compel the sheriff to execute another deed to some other person, then the authorities relied upon by the Court in the decision of this cause would have applied.

I contend in this case, that even if the purchaser at the sheriff's sale had been a stranger, and a *bona fide* purchaser, that has nothing to do with the question as it relates to the power and duty of the Court to set aside the sale for irregularity. In the case of *Groff* v. *Jones*, 6 Wend. 522, on a sale under an execution in favor of Groff against Jones, Smith and others, who were the plaintiffs in another judgment, became the purchasers and paid their bid, and yet the

Court set aside the sale as fraudulent. The Court, in the decision of the present case, concede on the authority of the case in 2 Caines, 61, that the attorney is not to be deemed as a *bona fide* purchaser; but that he is to be deemed a purchaser subject to notice of all defects and irregularities. But the Court say that still he was a third party, and purchased for himself, and in his own name.

I respectfully suggest that the Court have mistaken the law in this respect, that where the plaintiff's attorney purchases at a sheriff's sale, although he purchases in his own name, yet his purchase will be deemed the purchase of the plaintiff in the execution, and in trust for him. In the case of *Torrey* v. *The Bank of Orleans*, 9 Paige, 663, the Court say it is a settled principle, that no person, who is placed in a situation of trust and confidence in reference to the subject of the sale, can be a purchaser of the property on his own account; and that the principle was not confined to a particular class of persons, such as guardians, trustees and solicitors, but was a rule of universal application to all persons coming within its principle, which is, that no person can purchase an interest where he has a duty to perform that is inconsistent with his character of purchaser. 4 Johns. Ch. R. 118; 2 Sugden on Vendors, 120, 121, bottom paging.

In this case, then, Hoes, in contemplation of law, is deemed to have purchased for the plaintiff below, as his agent and in trust for him. The purchaser, then, was not a third party, or a stranger, and the case is to be treated and decided upon exactly the same principles, as though the defendant below had himself been the purchaser.

It has been contended on the argument, that Hoes should have been made a party to the writ of error. There is nothing in this objection. The motion below was to set aside the sale on the execution for irregularity. It never is necessary, in any such case, to make any person but the plaintiff in the execution a party. There is not an instance in all the numerous cases which are reported, of the purchaser being made a party. If the proceedings had been had in Chancery to set aside the deed, then it would have been necessary to

Day *et al. v.* Graham.

have made the purchaser a party, but not otherwise. The counsel on the other side in the argument of this case, and the Court in their decision have appeared to consider it throughout in the light of an application to set aside the sheriff's deed for fraud, and that it must go before a Court of Equity, and that testimony must be taken, and a solemn question tried, whether an actual fraud had been committed or not. When the case was a simple application to set aside a sale made in violation of the positive provisions of the statute; a case of irregularity, about which there is no question, and can be no explanation or cure, it seems to me, with all respect, a most solemn farce to send my clients into a Court of Equity on such an errand.

I request that the Court will order a re-argument of this cause; it involves important principles, and I think the case has not been fully considered.

> J. BUTTERFIELD,
> Attorney for plaintiff in error.

Upon this application, the Opinion of the Court was delivered by

SCATES, J. A motion is made in this case for a re-hearing, upon the ground of a distinction between irregular sales, and fraudulent sales. It is contended that a Court of Law can take cognizance of irregularities; and in New York, they have also, concurrently with Equity, taken cognizance of frauds and mistakes, on such motions as these; but that Courts of Equity can only take cognizance of such sales, where there is fraud or mistake. It is further contended that the execution of a deed by the sheriff cannot oust the jurisdiction of the Court.

This Court never denied the power and jurisdiction of the Court to set aside executions for irregularity, or sales for the same reason. But the counsel seems to have overlooked the fact, that any and every irregularity will not make the sale void, but only avoidable. The former, a Court of Law would set aside, no matter what conveyances may have taken place; the latter might be of a much more doubtful character,

under conveyances. As no right could be acquired under a void sale, the Court of Law, in setting aside the sale, upon motion, would do no injustice, that could be remedied by a Court of Equity, if the proceeding were there. In the latter case, there might be many rights affected, which could not be protected by a Court of Law, but which could in a Court of Equity.

As "solemn a farce" as it may seem to counsel, to be told by the Common Law Judge, that he cannot grant him the relief prayed, but that he may grant it, if addressed as a Chancellor, yet it is a distinction upon principles laid down in the very horn books of the law. And there would be more wisdom in addressing the sarcasm to the law making, than to the law administering department of the government.

The counsel offers, upon a re-argument, to show to the Court, that upon application to set aside a sale for irregularity, that it is perfectly immaterial, whether the sheriff has made a deed or not, to the purchaser. No additional authority has been vouched. Argument was heard upon this very point at the hearing, and authorities referred to. The one we have deliberately weighed, the others we have examined. In *Groff* v. *Jones,* the premises were bought in by the plaintiffs in one of the executions, and it does not appear that any conveyance had been made. The Court set aside the sale on the terms of the plaintiff in the first judgment being paid the amount of his judgment, and this is the only decision shown. The two cases of *Jackson* v. *Roberts,* 7 Wend. 88, and *Jackson* v. *Newton,* 18 Johns. 362, are mere *dicta* of the Courts as to this question. The authorities referred to in the opinion of the Court, were cited to show upon what grounds sales would be set aside, and not to show that it would be done in a Court of Law upon a motion, and after a conveyance to a third person as a purchaser. On this last point, there was not a decision in point referred to by counsel, except the *dicta* above.

But it is said, that the Court will hold a purchase by the plaintiff's attorney, as made in *trust* for the plaintiff, and so the plaintiff will be deemed to be the purchaser. For this he

Day *et al. v.* Graham.

refers to *Torrey* v. *The Bank of Orleans*, 9 Paige, 663; 2 Sugden on Vendors 120, 121, bottom paging; 4 Johns. Ch. R. 118. In the case in Paige, the cashier of the Bank was sent by the Bank to make the purchase, clearly showing an agency and trust. In Sugden, he is treating of an attorney buying of, or selling to clients, the subject matter about which he is so employed as attorney, which the law prohibits, on account of the abuse that may be made of the confidential relationship, &c. In the case in Johnson's Reports, the Chancellor strongly intimates that he would hold a purchase made by an attorney as in trust for the plaintiff, yet he does not decide it, but expressly puts it upon the ground from the evidence, that the attorney was plaintiff's agent, and therefore bought it in trust for him. But I shall not decide upon this point, for whether it be the one way or the other, it will not help this case. Admit it to be in trust; it is one of the grounds of exclusive jurisdiction of a Court of Equity, and would show the impropriety of doing at Law, what can only be done in Equity. So, still the party cannot avoid that "most solemn farce" of going "into a Court of Equity upon such an errand."

We are told, that we have misconceived the nature of the application that was made in the Court below, "and the law applicable thereto." The record shows the motion to be, "to set aside the execution, and the sale made under it, and *all subsequent proceedings*, for irregularity." The counsel here did not insist upon setting aside the deed. He only insisted upon setting aside the execution and sale. But when the sale is set aside, the conveyance must fall with it in this instance, where we hold the attorney to notice of all irregularity; so, in effect, "*the subsequent proceedings*" must fall with the sale, of which this conveyance is a part. We laid no stress upon its not being so made and pressed in terms; the effect is the same. We hold this sale voidable for irregularity, and as circumstances exist in the case which might call for terms, and modified relief, we send the parties to a forum, which may modify the terms of relief, as to Equity may seem meet.

*Motion denied.*