## CUNNINGHAM *v.* CASSIDY.

The statute (2 *R. S.*, 369, § 38), requiring the sale of land under execution, where it consists of known lots or parcels, to be made separately and not in gross, is directory.

A sale made in gross is irregular and voidable at the instance of the party aggrieved, but is not void.

APPEAL from an order of the Supreme Court, made upon an application for surplus moneys arising upon a sale of mortgaged premises upon a foreclosure. The foreclosure was upon a mortgage executed by Cassidy to Cunningham, in 1846. There was a surplus of $1205.26, after paying the mortgage debt and the costs of the foreclosure suit, which was paid to the treasurer of Kings County. Richard T. Williams claimed the surplus as the owner of the equity of redemption, and the claim was referred to W. E. Smith as a referee, to report upon its validity, and to ascertain the priority of the several liens, &c. By the report it appeared that Williams acquired his title by redeeming the premises from a sale on execution, made to one Thornby. The sale was on execution upon two judgments against Cassidy, one docketed August 15, 1848, and the other the thirteenth of September of the same year. The premises consist of ten building lots, but they were sold together as one parcel for $430. Williams' redemption was by virtue of a mortgage by Cassidy to him, executed the 4th of September, 1848, for $3500. Williams had since recovered a judgment, on the bond which accompanied the mortgage, for $2220. The papers in the foreclosure suit, which are included in the case, show that the amount to be raised to pay the mortgage debt and interest, with the costs and expenses, was $3309.74. In the report of the sale it is said that the premises were struck off and sold " as follows, to wit: " The several numbers of the lots are then given in one column, and the amount for which each sold is then set down opposite its

Cunningham *v.* Cassidy.

number; and assuming that the sale of the several lots took place in the order in which they are entered in this statement, the sum of $3315 had been raised when the eighth lot had been sold. After that, lot No. 21 was sold for $1700. Cassidy was the purchaser, for $490, of the first two lots mentioned in the statement, and Williams was the purchaser of the others, including lot No. 21, for $4525.

The referee reported that Williams was entitled to the whole of the surplus moneys, as the owner of the equity of redemption. On the motion for the confirmation of the report, made, on behalf of Williams, at a special term, Cassidy claimed, pursuant to a notice to that effect which he served on Williams' attorney, that these moneys should first be applied to reimburse Williams for the money which he had paid upon redeeming and the interest thereon, and that the balance thereof should be applied as a payment on Williams' judgment recovered on the bond.

The report was confirmed at a special term held before Judge BARCULO, and the money ordered to be paid out accordingly. Cassidy appealed to the general term, where it was decided that the sale of lot No. 21 under the foreclosure was illegal, and it was declared to be void. The county treasurer was directed to return to Williams the money which he had paid upon the purchase of it, and to pay the residue of the moneys, a few dollars, to Williams. Cassidy appealed here.

*Nicholas Hill*, for the appellant.

*George W. Stevens*, for the respondent.

DENIO, J. The material question in this case is, whether the sale by the sheriff of these ten lots in one parcel was void, or only voidable at the instance of a party aggrieved by the illegality. It was clearly the duty of the sheriff to sell the lots separately ( 2 *R. S.* 369, § 38); but the counsel for Williams

maintains that a title passed by the sheriff's deed, though the direction of the statute was disregarded. There is a well known distinction between statutory provisions which are of the essence of the proceedings to which they relate, and without the observance of which everything which is done is nugatory, and such as are merely modal or directory and the violation of which does not necessarily draw after it the effect of avoiding what has been legally done. After some reflection, and contrary to the opinion which I had formed on the argument, I am prepared to class the direction to sell land on execution in parcels, where it consists of distinct lots or tracts, as falling within the last mentioned class. A judgment is a general lien upon all the land owned by the debtor at the time it was docketed. It is the recovery of *the judgment* which affects the owner's title, by charging it with the burden of the debt; and the subsequent proceedings relate to the method in which the lien is enforced and executed. A departure from the prescriptions of the statute in conducting these proceedings may, or may not, prejudice the debtor or his other creditors. Cases may be supposed, of several parcels of land bound by a judgment and subject also to a prior lien, where a sale in gross under the judgment would be more beneficial, to all the parties concerned, than one in detail. Then it is only where the land offered for sale consists of several known lots, tracts or parcels, that the provision applies. This is a term susceptible of degrees of comparison, and although in a given case, and perhaps in this case, the division into lots would be sufficiently notorious, yet cases may often occur in which, although there had been such a division of the premises by ideal lines, a question would arise whether the fact was so well known that the sheriff, or the parties attending as bidders, would be bound to recognize the division. It would be an inconvenient rule which should make the validity of the sale depend upon a difficult question of fact. It would, I think, be a safer rule, to hold that the power exists to sell premises so

Cunningham *v.* Cassidy.

divided together, and that the title passes by a conveyance made pursuant to such a sale. A party in interest, applying within a reasonable time, would have right to set such a sale aside; but that he may waive by an express act of ratification, or by a neglect to assert his rights by a seasonable application to the court. It was repeatedly held, before the adoption of the Revised Statutes, that sales of several lots or farms in a single parcel was oppressive and wrong; but it was considered that a title passed, and that the party aggrieved was obliged to apply to have the sale set aside. (*Jackson* v. *Newton*, 18 *John.*, 362; *Tiernan* v. *Wilson*, 6 *John. Ch. R.*, 411; *Ryerson* v. *Nicholson*, 2 *Yeates*, 517.) The provision in question, like many other portions of the Revised Statutes, was apparently in affirmance of the law as it had been laid down by judicial decisions; and it is reasonable to suppose that if the legislature had thought it expedient to annex a consequence, to a violation by the sheriff of his duty in this respect, beyond what had been visited upon the purchaser by the course of decision upon the subject, it would have been done by positive language.

The question as to the regularity of the sale upon the judgment of foreclosure was not before the general term upon the appeal from the order of the special term. The order therefore setting aside the sale of lot No. 21 was erroneous.

COMSTOCK, J. The principal question is whether the respondent Williams took a valid title to the ten lots of land by acquiring as mortgagee the rights of the purchaser at the sale under the two judgments docketed in 1848, and by receiving the sheriff's deed in pursuance of that sale. The objection urged against his title is, that all of the lots, being separate and distinct parcels of land, were sold as one tract, and at a single bid.

The statute (2 *R. S.*, 369, § 38), provides that "when real estate shall be offered for sale by virtue of any execution,

which shall consist of several known lots, tracts or parcels, such lots, tracts or parcels shall be separately exposed for sale; and if any person claiming to be the owner of any portion of such estate or of such lots, tracts or parcels, or either of them, or claiming to be entitled by law to redeem any such portion, shall require such portion to be exposed for sale separately, it shall be the duty of the sheriff to expose the same for sale separately. No more of any real estate shall be exposed for sale than shall appear necessary to satisfy the execution." Prior to the revision of 1830, there was no statute containing these directions; but the practice of selling under execution several distinct parcels of land at one bid, and of putting up for sale a whole tract when some portion of it could be sold to satisfy the judgment, had been quite uniformly condemned by the courts as tending to the sacrifice of property and the oppression of the debtor. (18 *John.*, 359, 366; 13 *id.*, 102; 1 *John. Ch. R.*, 201; 6 *id.*, 414.) Such sales were sometimes set aside on motion made in the courts of law from which the execution issued, and by the Court of Chancery upon bill filed on the grounds of fraud and abuse of power. (*Cases supra.*) But it has never been held, either before or since the statute, that an irregular sale of several parcels at once was *ipso facto* void, so that no title could pass by the sheriff's conveyance; in other words it has never been decided that the question was one involving the power of the sheriff so to sell.

We are of opinion that the statute has introduced no new rule on the subject. Like a great variety of other statutes contained in the revision, it was intended merely as a distinct affirmation of a rule which had previously received the sanction of the courts. We regard it as a legislative direction to the sheriff in respect to a duty older than the statute, a direction which, if not followed, will be available to any party aggrieved, seeking to set aside the sale on account of the irregularity. In so regarding it, we are not unmindful of a rule, applied in many cases, that a statute authority

whereby a title may be divested, must be strictly followed in all the requisites which appear to be beneficial to the owner. But those are cases where the authority is special and in derogation of the common law. The rule which governs in them has little or no application to the regular judgments of courts and the processes issued to enforce such judgments. Before the judgment can be rendered the party has had his day in court, and when it is rendered the execution becomes a matter of right. These constitute the power to sell, a power against which no defect can be alleged if the judgment has been duly rendered and the execution duly issued. The process is under the control of the court from which it issues, and so is the sheriff's sale. If the directions of the statute are not strictly followed, or if there be any other irregularity the party aggrieved can be heard in a summary way by moving to set the sale aside. These are circumstances which distinguish the case before us from those in which the rule before mentioned has been so frequently applied.

It may probably be true that the due advertisement of the sale of real estate by the sheriff, as required by another section of the statute, is a condition precedent to the exercise of the power to sell which must be complied with. (*Olcott v. Robinson*, 20 *Barb.*, 148.) But the section now under consideration only professes to direct in regard to the manner of selling after all the conditions precedent have been fully performed. If we hold this direction to be so fundamental as to impeach titles where there has been no attempt to correct the irregularity, the consequences can hardly fail to be disastrous. A great number of titles would be open to question and doubt, and it is difficult to foresee where the mischief would stop. Indeed, the very inquiry whether the land sold existed in " separate lots, tracts or parcels," would often be attended with great difficulty. It might be a known block in a city, subdivided by arbitrary lines into contiguous lots, or a single farm composed of parcels from

SMITH.— VOL. III.        36

different lots, or a known lot occupied, in separate farms, by different tenants. Many embarrassing questions would arise, and many titles endangered which ought not to be disturbed.

But it is claimed that although the sale under the judgments was not void it was nevertheless voidable, and that Cassidy, the judgment debtor, may now in effect avoid it by resisting the claim of the respondent to the surplus money. We think not. Cassidy acquiesced in the sale until, by the lapse of twelve months, his own right to redeem was gone; and the rights of judgment and mortgage creditors then attached. The respondent as mortgagee took the steps, and advanced the sum of money, required by law to clothe himself with the rights of the purchaser, and he received the sheriff's deed. In such a case it would not, by any means, be a matter of course to set aside the sale, either on motion in the court from which the execution issued, or by suit in equity instituted for that purpose. The sale of the lots in one parcel being a mere irregularity, it would be necessary after such an acquiescence to show circumstances of fraud or omission, and to give some reasonable excuse for the delay. (1 *John. Ch. R.*, 502.) The question now is one of title to the surplus money arising upon a sale under a prior mortgage; no previous attempt of any kind having been made to impeach the respondent's title, to the land, under which the money has been awarded to him. If in this form of proceeding the sale could be questioned upon any of the grounds suggested, and that may well be doubted, it is a sufficient answer to say that no circumstances appear to justify the decision we are asked to make.

It appears that at the mortgage sale, out of which the surplus arose, one of the ten lots was struck off to the respondent for $1700. Aside from that bid — and, it may be presumed, from the order in which the sales are stated in the report of sale, before that bid was made — the other lots had produced enough to satisfy the mortgage and $5.26 more.

The whole surplus therefore was $1705.26. The Supreme Court set aside the sale of the lot to the respondent and directed the $1700 to be restored to him. The appellant complains of this part of the decision, suggesting that the sale of that lot was beneficial to him, and that the supreme Court erred in setting it aside in this proceeding. The conclusions we have arrived at upon the other questions render this of no importance. If the sale of the lot had not been set aside, and the $1700 had remained as a part of the surplus, it would have belonged, with the residue, to the respondent, upon the principles which have been stated; and it is of no concern to the appellant whether the respondent shall hold the title to this lot under the mortgage sale or under the sale by the sheriff.

The order of the Supreme Court must be affirmed.

All the other judges concurring,

Judgment affirmed.