## CUNNINGHAM *a.* CASSIDY.

### *Court of Appeals, July Term,* 1858.

#### JUDICIAL SALE.—CONSTRUCTION OF STATUTES.

The provision of the statute (2 *Rev. Stats.*, 368, § 38), requiring that in sales of real estate on execution, several known lots, tracts, or parcels, shall be sold separately, is directory merely, and a sale in disregard of it is not void, but only voidable.

A party aggrieved by such disregard must apply for relief within a reasonable time. He may waive the irregularity by express ratification, or by neglect to move within a reasonable time.

Appeal from an order modifying an order in relation to the disposal of surplus moneys in a foreclosure action.

The action was brought for the foreclosure of a mortgage made by the defendant Cassidy to the plaintiff Cunningham, in May, 1846. In August, 1848, John Quin obtained a judgment against Cassidy for $360.73, which became a lien on the mortgaged premises. On the 4th of September, 1848, Cassidy mortgaged the premises to Richard S. Williams, to secure the payment of $3500 in one year, with interest. And on the 13th of September, 1848, another judgment was obtained against Cassidy, by John B. Thursby, for $242.47.

Executions on both judgments were issued, on which were sold the several lots composing the premises *in one parcel*, on the 20th of April, 1849, and they were bid in by Thursby for $430. On the 19th of July, 1850, Williams, by virtue of his mortgage, redeemed from the sale, and in August following he received from the sheriff a deed of the premises.

Afterwards, and in February, 1853, Williams recovered judgment against Cassidy on the bond to secure which the mortgage

was given, the amount being $2220; and this judgment still remained in full force.

The surplus moneys in question arose from the foreclosure of the mortgage given on the premises by Cassidy to Cunningham, and the judgment directing the sale was obtained in June, 1853. The amount due on this mortgage at the time of the sale was $3309.74, and the referee sold nine of the lots for enough to satisfy the judgment, and leave a surplus of $1705.26. Two of the lots thus sold were bid in by Cassidy, and the residue, including one sold for $1700, were bid in by Williams, the respondent. The referee's report of sale bore date on the 29th of July, 1853, and on the same day the order of reference was made by which the present proceeding was commenced. The order purported to have been made on reading and filing a notice of claim to the whole of the surplus moneys, by Williams, as the *owner of the equity of redemption;* but what were the terms or contents of the notice was not otherwise disclosed. The referee, after causing notice to be served on Cassidy's attorney, proceeded to examine the matter, and finally reported that Williams, in virtue of the deed to him, was the owner of the equity of redemption, and as such entitled to the whole of the surplus moneys.

Williams afterwards gave notice of a motion to confirm the referee's report, and Cassidy gave notice that on the motion he would ask to have the surplus moneys applied, 1st. To pay Williams the amount he advanced on redeeming from the sale under the judgments; and, 2d. To satisfy, as far as the same would extend, the judgment obtained by Williams on the bond accompanying his mortgage.

The court below, at special term, decided in accordance with the report of the referee, but on appeal to the general term, the decision was modified by setting aside the sale as to the lot sold for $1700, ordering that amount to be repaid to Williams, who purchased it, and adjudging him entitled to the surplus arising from the sales of the other lots.

The following opinion was delivered at the general term:

By the Court.*—Brown, J.—This was a foreclosure upon a

---

* Present, Brown, Strong, and Rockwell, JJ.

mortgage prior, in point of time to Quin's judgment and Williams's mortgage.

The question is upon the distribution of $1705\frac{26}{100}$ surplus money. The positions already stated with regard to Williams's right to recover upon the bond (Williams a. Cassidy), show that he is entitled to the surplus money as the purchaser under Quin's judgment. As that judgment is older than his mortgage, he is not bound to apply any profit he may realize from the purchase to the satisfaction of his mortgage. He did not purchase subject to the mortgage, and the lands purchased are not applicable to the payment of his mortgage debt. He takes the surplus as owner under a title paramount to his mortgage, and therefore in respect to the surplus his mortgage is not a lien, and under it he has no more claim than if it was held by a stranger.

In respect to the sale of the property under the Quin judgment in one entire lot, when it was composed of several separate lots, the statute is directory merely, and the sale is only voidable on motion and not absolutely void. Besides, it is too late to raise that question upon proceedings in respect to the surplus under James Cunningham's mortgage, at which sale the premises were disposed of in separate lots.

It appears by the papers that the last lot, No. 21, was improperly sold, for there was a surplus of some $5\frac{26}{100}$, without the proceeds of this lot. The most simple and just method would be to vacate the sale as to that lot, and restore the money to the purchaser. Otherwise an opportunity should be afforded the wife of Cassidy to apply to have her inchoate right of dower in this fund protected.

From this decision the defendant Cassidy appealed to the Court of Appeals.

*Nicholas Hill*, for the appellant.—I. The sale by the sheriff in 1849, under the judgments, was of the ten lots of land covered by the Cunningham mortgage, as *one parcel*, and neither Thursby who caused the sale to be made, nor Williams who who attempted to redeem from him, acquired any title. (2 *Rev. Stats.*, 369, §§ 38, 40.) 1. Experience had proved that such sales of property in mass are generally fraudulent and oppressive, and the statute was designed to destroy

the *power* of making them. (Jackson *a.* Newton, 18 *Johns.*, 362; Tiernan *a.* Wilson, 6 *Johns. Ch. R.*, 414; Ryerson *a.* Nicholson, 2 *Yeates' R.*, 517; Woodge *a.* Cole, 2 *Noys' R.*, 59; 2 *Rev. Stats.*, 369, §§ 38, 40; Carnick *a.* Myers, 13 *Barb.*, 9; Cresson *a.* Stout, 17 *Johns.*, 122; Pepper *a.* Commonwealth, 6 *Monr.*, 30.) The sheriff's power to sell is created by statute, and the restrictions upon its exercise must be substantially complied with, or the sale will be void. (Hobart *a.* Frisbie, 5 *Conn.*, 592; Tod *a.* Philhower, 4 *Zabr.*, 796; Bright *a.* Boyd, 1 *Story's R.*, 487; Tiernan *a.* Wilson, 6 *Johns. Ch. R.*, 414; Carnick *a.* Myers, 14 *Barb.*, 9; Beebe *a.* Bange, 2 *E. D. Smith's R. C. P.*, 474; Cresson *a.* Stout, 17 *Johns.*, 122; Olcott *a.* Robinson, 20 *Barb.*, 148; Addison *a.* Crow, 5 *Dana's R.*, 277; Pepper *a.* Commonwealth, 6 *Monr.*, 30.) To declare that the statute is directory, and that the court may sanction a disregard of it, would leave the law as it was before, and defeat the legislative intent. (See Briggs *a.* Georgia, 15 *Verm. R.*, 72; Hardin *a.* Owings, 1 *Bibb's R.*, 215–217; *Sedgw. on Stat. & Const. Law*, 368, *et seq.*)

II. But if the sale was not absolutely void, it was clearly *voidable* in respect to Thursby, who caused it to be made and purchased under it; and Cassidy may now avail himself of his equitable rights by way of resisting Williams's present claim to the surplus. (2 *Rev. Stats.*, 369, § 38; Ryerson *a.* Nicholson, 2 *Yeates' R.*, 517; Tiernan *a.* Wilson, 6 *Johns. Ch. R.*, 414; Jackson *a.* Newton, 18 *Johns.*, 362; Dougherty, &c., 8 *Dana's R.*, 198, 200.) 1. The redemption by Williams, if any, gave him the identical interest which Thursby acquired, and the case is in effect the same as if the latter was claiming the surplus. (2 *Rev. Stats.*, 619, §§ 59, 60, 4th ed.) 2. Equity regards the purchase by Thursby as fraudulent, and he could have been compelled by Cassidy to relinquish it on terms after the statute time for redeeming had elapsed. (Tiernan *a.* Wilson, 6 *Johns. Ch. R.*, 411; Ryerson *a.* Nicholson, 2 *Yeates' R.*, 517; Rowley *a.* Brown, 1 *Binn R.*; Jackson *a.* Newton, 18 *Johns.*, 362; Brown *a.* Lynch, 1 *Paige*, 147.) 3. And a court of equity will compel Williams, whose claim to the surplus is infected with the fraud of Thursby's purchase, to relinquish it on the like terms. (2 *Rev. Stats.*, 619, §§ 59, 60, 4th ed.; and see cases above cited.) 4. Cassidy's right to avoid the sale on equitable

principles could have been asserted in an action for the land, and was clearly available on this motion. (Crary a. Goodman, 2 *Kern.*, 266; Dobson a. Pearce, 2 *Ib.*, 156; Foote a. Sprague, 12 *How. Pr. R.*, 355; Hunt a. Farm L., &c., 8 *How. Pr. R.*, 416.) 5. If the equities of the parties could not be thus adjusted on the motion, it must be for the reason that this *summary* process for reaching the surplus belongs only to a *lien holder*. (See *Rules of Sup. Ct.*, No. 48.)

III. The court below erred in vacating Williams's purchase of lot No. 21, and directing the $1700 which he had paid for it to be refunded to him; this purchase being beneficial to Cassidy, and he desiring to have the avails applied on Williams's judgment for the mortgage debt. 1. No question as to the validity of any of the purchasers at the foreclosure sale was made, nor could such a question possibly arise, on this motion. 2. The order vacating this purchase was an act of arbitrary power, done in a proceeding which assumed that the sale was valid throughout. 3. It was not even shown that lot No. 21 was sold *after* the others, or that either party could be legally benefited by vacating the sale. 4. One effect of it manifestly was to oblige Cassidy to take the risk of a future sale for less under Williams's judgment on the bond.

IV. Williams claimed the surplus, not as mortgagee, but as *owner of the equity of redemption*, and he was therefore bound to show affirmatively that he had complied strictly with the statute relating to redemptions, by presenting all the necessary papers. This he failed to establish. (*Laws of* 1836, 793, § 2; People a. Covell, 18 *Wend.*, 593; Hobart a. Frisbie, 5 *Conn.*, 592; Tod a. Philhower, 4 *Zabr.*, 786; People a. Fleming, 2 *Comst.*, 484.)

*Geo. W. Stevens*, for the respondent.—I. The respondent is a *bona fide* purchaser. He was not present at the sheriff's sale, nor is there any evidence that he knew at the time of making his redemption that the premises were sold in one parcel. (Jackson a. Young, 5 *Cow.*, 269.)

II. The statute (2 *Rev. Stats.*, 369, § 38), requiring the sheriff to expose each known lot for sale separately, is directory merely, and not mandatory. There is no provision in the statute, that the sale shall be void if this provision shall not be complied

with. (The People *a.* The Supervisors of Chenango, 4 *Seld.*, 317, 328 ; The People *a.* Cook, 4 *Seld.*, 67, 88, 89, 93 ; Marchant *a.* Langworthy, 6 *Hill*, 646 ; S. C. in Error, 3 *Den.*, 526 ; Jackson *a.* Young, 5 *Cow.*, 269 ; Groff *a.* Jones, 6 *Wend.*, 522 ; Savage *a.* Walsh, 16 *Ala.*, 619 ; Rex *a.* Birmingham, 8 *B. & C.*, 29, 35 ; Cole *a.* Green, 6 *Mann. & G.*, 872, 890 ; Doe *a.* Mostyn, 11 *Eng. L. & Eq. R.*, 504.)

III. At most, the sheriff's sale was a mere irregularity, which might perhaps have been set aside by the Supreme Court, on the motion of any party aggrieved thereby, before the delivery of the sheriff's deed. No such motion was made, and it is too late for the appellant (the judgment debtor), upon these proceedings, to question the validity of the sale.

IV. Justice between the parties was done by the order appealed from. It in terms protects the rights of the wife of the appellant, as to her dower in lot No. 21. The appellant having slept upon his rights from April, 1849, to August, 1853, was guilty of *laches*, and ought not to be permitted to question the validity of a sale which he might have attacked in another manner, at a prior period, and so have saved this litigation.

COMSTOCK, J.—The principal question is, whether the respondent Williams took a valid title to the lots of land by acquiring, as mortgagee, the right of the purchaser at the sale (on the judgment) docketed in 1848, and by receiving the sheriff's deed in pursuance of that sale. The objection urged against his title is, that all of the lots, being separate and distinct parcels of land, were sold as one tract, and at a single bid. The statute (2 *Rev. Stats.*, 369, § 38) provides that when "real estate offered for sale by virtue of any execution, shall consist of several known lots, tracts, or parcels, such lots, tracts, or parcels shall be separately exposed for sale, and if any person claiming to be the owner of any portion of such estate, or such lots, tracts, or parcels, in either of them, or claiming to be entitled by law to redeem any such portion, shall require such portion to be exposed for sale separately, it shall be the duty of the sheriff to expose the same for sale accordingly. No more of any real estate shall be exposed for sale than shall appear necessary to satisfy the execution." Prior to the revision of 1830, there was no statute containing these directions.

But the practice of selling under execution several distinct parcels of land at one bid, and of putting up a whole tract, when some portion of it could be sold to satisfy the judgment, had been quite uniformly condemned by the court as tending to the sacrifice of property and the oppression of the debtor. (18 *Johns.*, 359, 366; 3 *Ib.*, 102; 1 *Johns. Ch. R.*, 501; 6 *Ib.*, 414.) Such sales were sometimes set aside on motions made in the courts of law from which the execution issued, and by the Court of Chancery, upon bill filed on the grounds of fraud and abuse of power. (Cases *supra.*) But it has never been held, either before or since the statute, that an irregular sale of several parcels at once was *ipso facto* void, so that no title could pass by the sheriff's conveyance; in other words, it has never been decided that the question was one involving the *power* of the sheriff so to sell. We are of opinion that the statute has introduced no new rule on the subject. Like a great variety of other statutes contained in the revision, it was intended merely as a distinct affirmation of a rule which had previously received the sanction of the courts. We regard it as a legislative direction to the sheriff in respect to a duty older than the statute—a direction which if not followed, will be available to any party aggrieved, seeking to set aside the sale on account of the irregularity. In so regarding it, we are not unmindful of a rule, applied in many cases, that a statute authority whereby a title may be divested, must be strictly followed in all the requisites which appear to be beneficial to the owner. But those are cases where the authority is special in derogation of the common law.

The rule which governs in them has little or no application to the regular judgment of the courts, and the processes issued to enforce such judgments. Before the judgment can be rendered, the party has had his day in court, and when it is rendered, the execution becomes a matter of right. These constitute the power to sell—a power against which no defect can be alleged, if the judgment has been duly rendered, and execution duly issued.

The process is under the control of the court from which it issued, and so is the sheriff's sale. If the directions of the statute are not strictly followed, or if there be any other irregularity, the party aggrieved can be heard in a summary way by moving to set the sale aside.

There are circumstances which distinguish the case before us from those in which the rule before mentioned has been so frequently applied.

It may be true that the advertisement of the sale of real estate by the sheriff, as required by another section of the statute, is a condition precedent to the exercise of the power to sell, which must be complied with. (Olcott *a.* Robinson, 20 *Barb.*, 148.) But the section now under consideration only professes to direct in regard to the manner of selling, after all the conditions precedent have been fully performed. If we hold this direction to be so fundamental as to impeach titles where there has been no attempt to correct the irregularity, the consequences can hardly fail to be disastrous.

A great number of titles would be open to question and doubt, and it is difficult to foresee where the mischief would stop. Indeed, the very inquiry whether the land sold existed in " separate lots, tracts, or parcels," would often be attended with great difficulty. It might be a known block in a city, subdivided by arbitrary lines into contiguous lots, or a single farm composed of parcels from different lots, or a known lot occupied in separate farms by different tenants. Many embarrassing questions would arise, and many titles endangered which ought not to be disturbed. But it is claimed that although the sale under the judgments was not void, it was nevertheless voidable, and that Cassidy, the judgment debtor, may now in effect avoid it by resisting the claims of the respondent to the surplus money. We think not. Cassidy acquiesced in the sale until by the lapse of twelve months his own right to redeem was gone ; and the right of judgment and mortgage creditors then attached. The respondent, a mortgagee, took the steps and advanced the sum of money required by law to clothe himself with the rights of the purchaser, and he received the sheriff's deed. In such a case it would not by any means be a matter of course to set aside the sale, either on motion in the court from which the execution issued, or by suit in equity, instituted for that purpose. The sale of the lots in one parcel being a mere irregularity, it would be necessary, after such an acquiescence, to show circumstances of fraud or oppression, and to give some reasonable excuse for the delay. (1 *Johns. Ch. R.*, 502.) The question now, is one of title to the surplus money arising upon a sale

under a prior mortgage, no previous attempt of any kind having been made to impeach the respondent's title to the land under which the money has been awarded to him. If in this form of proceeding the sale could be questioned upon any of the grounds suggested (and that may well be doubted), it is a sufficient answer to say that no circumstances appear to justify the decision we are asked to make.

It appears that at the mortgage sale, out of which the surplus arose, one of the ten lots was struck off to respondent for $1700. Aside from that bid, and, it may be presumed from order in which the sales are stated in the report of sale, before that bill was made, the other lots had produced enough to satisfy the mortgage, and $5.26 more. The whole surplus, therefore, was $1705.26. The Supreme Court set aside the sale of the lot to the respondent, and directed the $1700 to be restored to him. The appellant complains of this part of the decision, suggesting that the purchase of that lot was beneficial to him, and that the court erred in setting it aside in this proceeding. Under the conclusion we have arrived at upon the other questions, this is of no importance.

If the sale of the lot had not been set aside, and the $1700 had remained as a part of the surplus, it would have belonged with the residue to the respondent upon the premises which have been stated, and it is of no concern to the appellant whether the respondent shall hold the title to this lot under the mortgage sale, or under the sale by the sheriff.

The order of the Supreme Court must be affirmed.

DENIO, J.—The material question in the case is, whether the sale by the sheriff of these ten lots in one parcel was void, or only voidable at the instance of a party aggrieved by the illegality. It was clearly the duty of the sheriff to sell the different lots separately (2 *Rev. Stats.*, 369, § 38), but the counsel for Williams maintains that a title passed by the sheriff's deed, though the direction of the statute was disregarded. There is a well-known distinction between statutory provisions which are of the essence of the proceeding to which they relate, and without the observance of which every thing which is done is nugatory, and such as are merely modal or directory, and the violation of which does not necessarily draw after it the effect of

avoiding what has been legally done. After some reflection, and contrary to the opinion which I had formed on the argument, I am prepared to class the direction to sell land on execution in parcels, where it consists of distinct lots or tracts, as falling within the last-mentioned class. A judgment is a general lien upon all the land owned by the debtors at the time it was docketed. It is the recovery of the judgment which affects the owner's title by charging it with the burden of the debt, and the subsequent proceedings relate to the method in which the lien is enforced and executed. A departure from the prescriptions of the statute in conducting these proceedings may or may not prejudice the debtor, or his other creditors. Cases may be supposed of several parcels of land, bound by a judgment, and subject also to a prior lien, where a sale in gross under the judgment would be more beneficial to all the parties concerned therein than one in detail; then it is only where the land offered for sale consists of several *known* lots, tracts, or parcels, that the provision applies. This is a term susceptible of degrees of comparison; and although in a given case, and perhaps in this case, the division into lots would be sufficiently notorious, yet cases may often arise in which, although there had been a division of the premises by ideal lines, a question would arise whether the fact was so well known that the sheriff or the parties attending as bidders would be bound to recognize the decision. It would be an inconvenient rule which should make the validity of the sale depend upon a difficult question of fact. It would, I think, be a safer rule to hold that the power exists to sell premises so divided together, and that the title passes by a conveyance made pursuant to such a sale. A party in interest applying within a reasonable time would have a right to set such a sale aside; but that he may waive by an express act of ratification, or by a neglect to assert his rights by a seasonable application to the court. It was repeatedly held before the adoption of the Revised Statutes, that sales of several lots or farms, in a single parcel, was oppressive and wrong; but it was considered that a title passed, and that the party aggrieved was obliged to apply to have the sale set aside. (Jackson *a.* Newton, 18 *Johns.*, 362; Tiernan *a.* Wilson, 6 *Johns. Ch. R.*, 614; and see also Ryerson *a.* Nicholson, 2 *Yeates*, 517.) The provision in question, like many other portions of the Revised Statutes, was apparently in

affirmance of the law as it had been laid down by judicial decisions, and it is reasonable to suppose that if the Legislature had thought it expedient to annex a consequence to a violation by the sheriff of his duty in this respect, beyond what had been visited upon the purchaser by the course of decision upon the subject, it would have been done by positive language.

The question as to the regularity of the sale upon the judgment of foreclosure, was not before the general term upon the appeal from the order of the special term. The order, therefore, setting aside the sale of lot No. 21, was erroneous. The order of the Supreme Court must be affirmed.