Williams v. Allison.

---

### WILLIAMS et al. v. ALLISON et al.

1. Will; construction of: parties. Clauses contained in a will were as follows: First. I give and bequeath unto my beloved wife all my property of every kind whatsoever, whether real or personal, rights, credits and demands, in law or equity, as fully as I might or could if living, or in any manner have or hold the same. Second. In case of the death of my said wife, I give and bequeath my said property to my children. Third. In case my said wife survives me, and should not use or dispose of all my said property, but at the time of her death a portion thereof should remain undisposed of by her, I give and bequeath the same to my said children, or the survivors of them, share and share alike. *Held*, that the first

clause gave the property in fee absolute to the wife. That the
second clause was to be construed the same as if it read, " in case
of the death of my said wife, *before my decease*, I give and bequeath,"
etc. That the third clause did not limit the estate—the absolute
fee—given by the first clause to the wife, nor curtail her power of
absolute disposal.

2. —— It was accordingly *held*, in a proceeding involving the title to
the property, that it was neither necessary nor proper that the widow
should join with her as co-plaintiffs the children of the testator.
Being possessed of the absolute fee, a judgment against her would
conclude the heirs.

3. Statute of limitations: PROCEEDING TO SET ASIDE SHERIFF'S SALE.
A proceeding to set aside a sheriff's sale of land, sold in gross,
in which actual fraud is alleged by the plaintiff, is a proceeding cog-
nizable as well at law as in chancery, and, hence, does not fall within
section 2740, subdivision 3, of the Revision, which provides that
actions for relief on the ground of fraud, in cases heretofore solely
cognizable in equity, must be brought within five years from the
time the action accrued.

4. —— It is to be regarded, rather, as an action for the recovery of
real property, within the meaning of subdivision 4 of said section
2740, and not barred until the expiration of ten years.

5. Laches: NEGLIGENCE: ESTOPPEL. The doctrine of equity which
denies relief to parties guilty of *laches* is restricted, as a general
rule, in its application, to cases where third parties have, during the
delay, acquired rights, or the opposite party has so changed his situ-
ation as that he would be prejudiced by allowing the negligent party
to assert his claims.

6. Execution sale: OF LOTS EN MASSE: LACHES. A sheriff's sale to
the execution plaintiff, for an inadequate price, of a large number
of city lots, *en masse*, lying, for the most part, separate and remote
from each other, is, at least, as to those lots remaining unsold by, and
in the hands of, the purchaser, voidable, and may be set aside in a
proceeding therefor by the execution defendant.

7. —— But as to those lots that have been resold by the execution
plaintiff to third parties, who purchased in good faith, and without
any fraud or irregularity, and made improvements thereon, the sale
will be held valid after the lapse of several years.

8. —— It was *held*, under the circumstances of the present case, that
the execution plaintiff purchasing at the sale should be charged, as
to those lots sold and conveyed by him to innocent purchasers,
with the price for which he bid the lots in, rather than with the
amount he received for them from such purchasers.

*Appeal from Woodbury District Court.*

FRIDAY, JANUARY 26.

ACTION in equity to set aside a sheriff's sale and quiet plaintiff's title to one hundred and seventy-seven lots in Sioux city. Bernhart Henn, Jesse Williams, H. C. Bacon, J. K. Cook and G. D. Temple were in 1857, and before and after that time, partners in banking and land agency business, under the firm name of Henn, Williams & Co. The defendant Allison was clerk for the firm from June, 1857, to the fall of 1858. The firm became indebted to Allison, and, in September, 1860, Allison recovered judgment against B. Henn, J. Williams and H. C. Bacon thereon as individuals and members of the firm for $3,655 debt and $15.30 costs. In April, 1862, B. Henn and J. Williams visited Sioux city, where the firm did business, the defendant Allison resided, and the judgment was recovered, and paid thereon $2,353.17 in one payment and $58.76 in another. It is claimed by the plaintiff that at this time the defendant Allison agreed to act as agent for B. Henn and J. Williams in relation to the property in controversy and as to other matters, and that he would not issue execution upon his judgment, certainly not till he had given them notice that he would. These claims are denied by the defendant. Prior to this Williams had conveyed one-half the lots to Henn, they being theretofore joint owners thereof, and in the deed recited such ownership, and that the deed was made to divide the same between them, Henn having at the same time conveyed the other half of the lots specifically to Williams. Williams' deed to Henn was duly recorded, but Henn's deed to Williams was not.

Shortly after these payments both Henn and Williams left the State on business and remained most of the time absent therefrom, though occasionally in the State, until

Henn's death in August, 1865; and Williams remained thus absent until a short time prior to the commencement of this suit in November, 1868. Henn left a will devising his entire estate to his wife, the plaintiff, Elizabeth Henn, but with a subsequent clause, directing that, in case his wife survived him, and did not use or dispose of all his property, the remainder at her death should go in equal portions to his children, some of whom are still infants.

In November, 1862, Allison caused execution to issue upon the judgment and against all the defendants therein, and the same was levied upon the one hundred and seventy-seven lots in controversy, "as the property of the within named defendants." On the 29th day of December, 1862, the lots were sold "in a lump" to the defendant Allison, for $1,652.05, the balance due on his judgment. The return on the execution shows the sale of one lot to A. W. Hubbard for $50, and one lot to Allison for $1, and the return and deed both show the sale in gross of all the balance to Allison for the sum above stated. The proof shows that prior to such sale in gross the sheriff offered each lot by itself and could get no bid therefor except for the two above specified. The lots were situated in the original city, and, in additions thereto, and were scattered over the city in different blocks and often remote from each other. Some of the lots had been sold for taxes, and the amount, alleged by defendant to be due for taxes, penalty, interest and costs was $2,145.40, a portion of which, it is also claimed by plaintiffs, have been remitted by the county. The plaintiffs claim that they had no actual knowledge of the execution, levy or sale until a short time before the bringing of this suit; but there is no claim but that the sheriff gave the notice of the sale under execution in the manner required by law.

Prior to the bringing of this suit the defendant Allison had sold fifty-eight of the lots to other parties, and the present owners thereof, being thirty-six different persons,

are made defendants. The amount, as shown by the proof, which he realized from such sale was $5,651; many of the sales took place shortly after his purchase.

This suit is brought by Jesse Williams, Elizabeth Henn, the widow, and Edward Henn and others, the children of Bernhart Henn, deceased, against Allison and the subsequent purchasers of the lots from him. The plaintiffs claim to set aside the sale, recover the property and quiet their title on the grounds that Allison was their agent; that he agreed to give notice before issuing execution and did not; that the sale was in gross and was of the separate individual property of two of the defendants for an inadequate price, and also for actual fraud; that the subsequent purchasers either had actual notice of these facts, or were charged with constructive notice thereof. The defendants deny all the allegations or claims of plaintiffs, and aver good faith, regularity, etc., and rely upon plaintiffs' laches and the statute of limitations. On the hearing, the district court dismissed plaintiffs' petition absolutely. The plaintiffs appeal. The further necessary facts are stated in the opinion.

*Joy & Wright, Baldwin & Wright* and *Withrow & Wright* for the appellants.

*Wilson & Dye, John Currier* and *Polk & Hubbell* for the appellees.

COLE, Ch. J.—I. The first question presented arises upon these facts. Bernhart Henn left the following will:

1. WILL: construction of: parties. "*Item* 1. I do hereby give and bequeath unto my beloved wife, Elizabeth S. Henn, all my property of every kind whatsoever, whether real or personal, rights, credits, demands or otherwise, in law or equity, as fully as I might or could if living, or in any manner have or hold the same. *Item* 2. In case of the death of my

said wife I give and bequeath my said property to my beloved children Mary J. Henn and. &ast; &ast; &ast; share and share alike. *Item* 3. In case. my said wife survive me, and should not use or dispose of all my said property, but at the time of her death a portion thereof should remain undisposed of by her, I give and bequeath the same to my said children or the survivors of them, share and share alike."

The children of Bernhart Henn, deceased, by an amended petition, were made parties plaintiffs. The defendants moved to strike out of the amended petition the names of such children on the ground that they had no interest, and were improperly joined as plaintiffs. This motion was sustained, and thereon arises the first question for our determination.

The first clause of the will gives the property in fee, absolutely, to the wife, Elizabeth Henn. The second clause is, most evidently, to be construed the same as if it read "in case of the death of my said wife, *before my decease,* I give and bequeath," etc. The third clause does not limit the estate; the absolute fee, given by the first clause to the wife, nor curtail her power of absolute disposal; it simply directs the disposition of what should remain undisposed of by her. What, if any thing, would be the effect of this clause of the will, in a controversy for such remainder, between the children of Bernhart Henn and the children of his wife by a second husband, claiming such remainder as her heirs, we need not determine, for no such case is presented. But, as between her and the children, we hold that she is so possessed of the absolute fee, as that any disposition of the property made by her, either as grantor in a conveyance, or as a party to a suit, binds the property and concludes the children. And as a consequence there was no error, or certainly none to the prejudice of the plaintiffs in this case, and the ruling of the district court in this particular is affirmed. *Jackson* v. *Coleman*, 2 Johns.

391; *Jackson* v. *Babcock*, 12 id. 389; *Jackson* v. *Robbins*, 16 id. 537 (*i. e.*), 589, and other cases cited by appellees' counsel.

II. The next question arises upon the statute of limitations. Our statute provides that actions founded on un-written contracts, those brought for injuries to property, or for relief on the ground of fraud in cases heretofore solely cognizable in a court of chancery, and all other actions not otherwise provided for in this respect, must be brought within five years. Rev., § 2740, subd. 3. Those founded on written contracts, on judgments of any courts (except those courts provided for in the next section), and those brought for the recovery of real property within ten years. Rev., § 2740, subd. 4.

*3. STATUTE OF LIMITATIONS: proceeding to set aside sheriff's sale.*

Although actual fraud is charged in this case, and the relief prayed for has heretofore been granted in a court of chancery, yet the relief sought has been heretofore granted as well in the courts of law as in the courts of chancery. This is especially true as to relief against such sales in gross, and for other irregularity, while the property remains in the hands of the execution purchaser. It is quite apparent, then, that this cause of action does not fall within the class specified in the third subdivision above quoted, and is not barred by the statute within five years.

Nor is it an action brought for the recovery of real property, in the more general and common acceptation of that term. And yet, so far as concerns the property held by the purchasers from the defendant Allison and his grantees, it is in effect and directly an action for the recovery of real property. And, if it should be found that the plaintiffs are the owners of the property, it is reasonably certain that defendants would be entitled to the provisions of the occupying claimant law, which accrue only to those who, in the proper action, are found not to be the rightful owners of the land in controversy. Rev., § 2264, *et seq.*

And, further than this, the defendant Allison, by the records of the county, is the owner of the lots still held by him ; and by the construction of law, at least, is in possession of them, since possession follows the title. This action is really brought to recover the property ; and the right to have the sheriff's sale set aside is one of the matters to be established in order to maintain the plaintiffs' right to recover. The plaintiffs were the owners and in possession of the property ; they have been divested of that ownership and possession, and it is to recover the same that this action is brought. This result, however, is sought by showing that the defendant, in equity, never had any title, rather than by showing in plaintiffs an independent and paramount title, as is usual in actions for the recovery of real property. Upon the whole case, we hold that to bar the action by the statute of limitations would require ten years, and, as a consequence, that the action is not barred by the statute. Our statute of limitations applies equally to suits in equity as in actions at law. *Relf* v. *Eberly*, 23 Iowa, 467.

III. It is further urged by defendants, that even if the action is not barred by reason of the letter of the statute

5. LACHES: negligence: estoppel.

of limitations, yet the plaintiffs have been guilty of such *laches* in the premises as will induce a court of equity to withhold any relief. That courts of equity do often refuse to lend their active interposition in behalf of *stale* demands, and where parties have been guilty of negligence and *laches* in the assertion of their rights, is quite true.

The plaintiffs seek to avoid the force of this objection of *laches* on their part, by alleging that the defendant Allison was their agent; that he agreed he would not issue execution without first notifying them of the fact ; that he had claims of one of them upon a third party for collection and to apply in payment of the judgment; that he was authorized to negotiate sales of the lots, and to receive and

apply the proceeds on the judgment; that plaintiffs were absent from the State most of the time, and that they had no notice or knowledge of the sale until about the time the suit was brought. If these were all true, unquestionably the *laches* would be excused. But the fact of agency is denied, and the weight of evidence is not so preponderating as to justify us in saying that the relation of principal and agent did, in fact, exist; though there is much in the previous relations of the parties and in the other circumstances of the case to authorize the belief that plaintiffs may have so considered him. Substantially the same may be said of the other allegations made in avoidance of the *laches*. None of them are satisfactorily established; and yet all the facts and circumstances proven afford some palliation or degree of excuse for the negligence and delay on the part of plaintiffs.

But this doctrine of equity which denies relief to parties guilty of *laches* is restricted, as a general rule, in its application to cases where third parties have, during the delay, acquired rights, or the opposite party has so changed his situation as that he would be prejudiced by allowing the negligent party to assert his rights. *Mohawk Bank* v. *Atwater*, 2 Paige's Ch. 54; *Cunningham* v. *Cassidy*, 17 N. Y. 276 (*i. e.*), 282; *Jackson* v. *Newton*, 18 Johns. 355; *Chambers* v. *Cochrane & Brock*, 18 Iowa, 159 (*i. e.*), 170. Under this general rule, and in view of all the facts of this case, we hold that the *laches* of the plaintiffs do not defeat their right of action entirely. The effect such *laches* have in limiting the measure of the plaintiff's recovery will be considered in connection with questions influenced by their *laches*.

IV. The proof shows that on the day of sale of the lots in controversy, the sheriff offered the lots through the entire list separately; that one was struck off to the defendant Allison at the bid of $1; and one was struck off to a third party at the

6. EXECUTION SALE: of lots en masse: laches.

bid of $50; and these were the only bids made for any of the lots as they were offered separately. The sheriff then offered all the lots (except the two bid off as aforesaid) in a lump, and the defendant Allison bid the amount still due upon his judgment for all of them, which was the only bid made therefor, and they were struck off to the defendant at that bid. It also appears that the lots were not contiguous, but were scattered over the original plat of Sioux city, and two additions thereto; in some instances two, three or more of the lots were contiguous to each other; or situated in the same block. It was also true, and so appeared of record, that one-half of the lots were the separate property of the execution defendant, Bernhart Henn; and the deed to him recited the fact that the other half belonged to Williams; but his deed from Henn therefore was not upon the record, and, so far as the records showed (except by the recital aforesaid), the other half belonged to Henn and Williams jointly.

The balance due upon the judgment, including interest, costs and increase costs, was $1,652.05. It also appears that some of the lots had been sold for taxes, and as to others the taxes were delinquent, etc., and the nominal amount then required to redeem the property from tax sale, to pay the taxes, interest, etc., due thereon, was about $2,000. The testimony as to the value of the lots at that time is very conflicting; indeed the witnesses differ so widely as to require the exercise of a good degree of charity to credit either their memory or judgment. But from all the evidence together, after making generous allowances for the bias of judgment resulting from interest, prejudice and avenues of employment, we are satisfied that the price bid, after adding thereto the taxes, penalty, etc., was very inadequate; and yet not so inadequate as to justify us in setting aside the sale for that reason alone, although it is a fact entitled to consideration and of much weight in determining this point in the case. The bid

was probably from one-sixth to one-twelfth the value of the property.

Upon these facts we *hold* that the sale was irregular, certainly voidable, if not absolutely void, and should be set aside, at least so far as the lots still held by the defendant Allison, at the time this action was brought, is concerned. As these lots were situated, the first offer of them separately affords no justification or authority whatever for their subsequent sale *en masse*. Where an entire farm or tract of land embracing contiguous subdivisions, possesses, or may possess, a greater value as a whole, than if separated or divided between different owners, it might, and probably would, be held regular, or not invalid, to sell the same in a lump, if no bid could be obtained for the subdivisions as they were offered separately. In such case, there is a reason for making a bid for the whole, when a bid for each or any of the subdivisions might not be made, for a party might reasonably want to purchase all or none; and for him it might have a value as an entire tract or farm, which it might not have if any of its parts or subdivisions were sold to another.

But, in this case, no such reason can possibly exist as to lots situated remote from each other. They can have no increased value by reason of being sold together. Each has its separate location, and, of necessity, its separate value, and the fact that the two lots are owned by one person cannot affect their respective values. In the absence of contiguity, or some special cause, such as woodland to a farm, different tracts or lots may not be sold together, and the illegality of such a sale cannot be avoided by first offering the different tracts or lots separately. If no bids are obtained for them when offered separately, the sheriff should so return; but such fact can give him no authority to sell distinct and remote parcels *en masse*.

The further fact, stated above, that a part of these lots belonged to one of these defendants and a part to another,

affords an additional and strong reason for setting aside the sale. Such sale of the property of two separate owners tends to defeat and greatly embarrass in any event and always, the right of redemption. If such sale was attacked diligently and without any *laches*, there would be but little difficulty in holding it voidable certainly, even if the property had passed into the hands of *bona fide* third persons for value. In any event there can be no question, either upon principle or authority, and whether the irregularity of sale in gross rests upon the common law or upon statute, that so far as the property still held by Allison is concerned, the sale should and must be set aside. *Grapengether* v. *Fejervary*, 9 Iowa, 163; *Boyd* v *Ellis*, 11 id. 102; *Bradford* v. *Limpus*, 13 id. 424; *White* v. *Watts*, 18 id. 76; *Lay* v. *Gibbons*, 14 id. 377; *Love* v. *Cherrie*, 24 id. 210; *King* v. *Sharp*, 26 id. 286; *Tieman* v. *Wilson*, 6 Johns. Ch. 411; *Hewson* v. *Daggard*, 8 Johns. 332; *Woods* v. *Monell*, 1 Johns. Ch. 502; *Goff* v. *Jones*, 6 Wend. 522; *Cunningham* v. *Cassidy*; 17 N. Y. 276; S. C., 7 Abb. Pr. 183; *Troup* v. *Wood*, 4 Johns. Ch. 228; *Bunker* v. *Rand*, 19 Wis. 258; *Anus et al.* v. *Lockwood et al.*, 13 How. Pr. 556.

Our statute (Rev., § 3319) provides for a further and special subdivision of land for the purpose of that particular sale, and does not otherwise affect the common-law rule as to sale in parcels.

V. As to the property held by purchasers from the defendant Allison, we *hold*, that their title cannot be disturbed, and the sale as to them will not be set aside. There is no showing of any bad faith on the part of any one of these purchasers, or that they had any actual notice of any fraud on the part of any one, or of any irregularity even, in the sale. They are only charged with constructive notice of what appears from the records. Although such sale might have been held void as to the execution defendant and purchaser, and all others, if it had been promptly

assailed by proceedings to set the same aside; yet, since these plaintiffs have been guilty of great delay, if not of culpable *laches*, in attacking the sale, following *Jackson* v. *Newton*, 18 Johns. 355, we will not inquire whether it is void, but accept the general rule as stated in *San Francisco* v. *Pixley*, 21 Cal. 56, that such sales are not void but voidable. And such sale, though voidable, will not be vacated after a great lapse of time, so as to work injustice upon third parties. *Mohawk Bank* v. *Atwater*, 2 Paige's Ch. 54; *Cunningham* v. *Cassidy*, 17 N. Y. 276 (*i. e.*), 282. It is shown that the defendants, who have purchased the property from the defendant Allison, have respectively improved their lots by the erection of buildings thereon of from $1,000 to $40,000 each in value, and that the lots have increased in value since they purchased from Allison, and upon the prices paid by them near ten-fold. Many of the lots have been made homesteads; others, places of business, and one a public school. To disturb all these parties, who have in good faith made their purchases and improvements, after the lapse of about six years, and the greatly enhanced value of the property, without a very clear and satisfactory showing of cause for the delay, would be to unsettle titles and reward the negligent. In view of all the facts, we are clear, that the title of these good faith purchasers from Allison should not be unsettled, but should be quieted in the respective owners thereof. *Noyes* v. *True*, 23 Ill. 503.

We have now disposed of all the questions made in the argument of the case, and our views lead us to the conclusion that the judgment of the district court must be reversed.

The sheriff's sale and deed of the lots, so far as respects those owned by Allison at the time this suit was commenced, will be set aside and the title quieted in the plaintiffs. As respects the lots sold and conveyed by Allison to good faith purchasers, before this action was

begun, the title will be quieted in such purchasers and owners. Some question has arisen in our minds as to whether the defendant Allison shall be charged with the price he bid for the lots sold by him to third persons, or shall be charged with the amounts he has received for them. At first view it seemed to some of us that the latter was the true rule, and this for the supposed reason that Allison was the holder or custodian of the legal title *in trust* for these plaintiffs, and being a trustee he should account for the proceeds of the trust property.

But on further examination, and in the absence of proof showing any actual fraud, and with the positive and uncontradicted testimony of the sheriff that he made the sale in the manner he did, on his own motion and without any request by Allison so to do, or knowledge by him of his purpose so to sell, we think he should be held to account for only the amount of his bid for the lots sold by him, this amount to be ascertained and fixed by the proportionate value of the lots sold to all the lots purchased. This view finds its support in the fact that the sale is voidable for the mere irregularity of the sheriff, and if the defendant had sold all the lots, prior to the bringing of the suit, we know of no principle of law or equity which would make him a trustee of the proceeds of such sale for the benefit of the judgment defendants. If he would not be trustee when he had sold all, why should he be when he has only sold a part. It seems that the principle upon which the judgment debtor may reach property irregularly sold by the sheriff is that he has an equity *in the property* arising from, or which is not cut off by the irregular sale, which equity he may enforce against the property itself while in the hands of the parties charged with notice of such equity, but which, in the absence of fraud, will not be carried beyond the property itself. In other words, if the judgment debtor, by his negligence or *laches* in asserting his equity, suffers the party to change

Williams v. Allison.

his relation to the property, so that the property itself cannot be reached, he must lose the benefit of such equity. Indeed, this is the general rule, for if one have an equity in real property held by another, and which, as against that other, might be enforced; yet, if that other sell to a third party, as against whom such equity could not be enforced, this fact alone will not give the one a right to collect the value of his equity from the other, who by his sale had cut it off from the property itself.

The cause will therefore be remanded with directions to the district court to set aside the sheriff's sale and deed so far as respects the lots held by Allison; to ascertain, by reference or otherwise, the proportionate value of the lots sold by Allison, upon the basis that all were worth $1,652.05, the amount of his bid, and to credit such amount upon the judgment of *Allison* v. *Henn, Williams & Bacon*, setting aside the original credit and satisfaction; also to ascertain, in the same manner, the whole amount of taxes, penalty, interest, costs, etc., which Allison has paid upon all the property and which was a lien thereon at the time of his purchase, and fix the proportion which should be paid by the lots still held by Allison, upon the basis of their proportionate value of the whole property; and also to ascertain the amount of taxes, etc., paid by Allison since his purchase upon the lots still held by him, and for the aggregate of these two latter sums, with interest from dates. of payment, Allison will be entitled to a lien upon the property, and the same may be enforced by special execution. And execution may also issue upon the original judgment for the balance still due thereon, and for that purpose the judgment will be considered as revived against Elizabeth S. Henn, the executrix and devisee of B. Henn, deceased. Or, at the request of either party these supplemental proceedings and final judgment may be had in this court.

Reversed.